UNITED STATES of America,
Plaintiff-Appellee,

v.

Lathia Paul BANKS, Jr., and Alvin Radford Dollar, Defendants-Appellants.

No. 73-1593
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1973.

Rehearing Denied Nov. 12, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Harris Bostic, Atlanta, Ga. (Court appointed, both), for defendants-appellants.

John W. Stokes, U. S. Atty., E. Ray Taylor, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

Defendants Dollar and Banks were convicted in the United States District Court for the Northern District of Georgia for armed robbery of the Fort McPherson Commissary, a violation of 18 U.S.C. § 2114. Each was sentenced to 25 years imprisonment. In this appeal defendants contend that their convictions should be reversed for three reasons: 1) that they were denied effective assistance of counsel as a result of the lineup identification procedure employed by FBI agents; 2) that the trial court erred in refusing to submit any of defendants' proposed charges on identification evidence to the jury; and 3) that the trial court erred in permitting the jury to disperse for lunch after the case had been submitted for deliberation. We affirm.

I

The evidence on which defendants were convicted consisted primarily of testimony by four witnesses, each of whom identified one or both of the defendants either as participants in the robbery or as persons at the scene of the crime on the day it was committed. All four of the witnesses had been present at a lineup conducted by the FBI at the Atlanta Police Department after defendants' arrest. Each witness viewed the lineup and then adjourned with two FBI agents to a side room before giving an initial response as to the identity of any of the men in the lineup. Counsel for defendants observed the lineup, its preparation and execution, but was not permitted to enter the side room where the witnesses were taken to give their initial responses.

Defendants argue that the exclusion of counsel from the initial response stage of the lineup proceeding violates the spirit and intent of United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. *Wade* and *Gilbert* establish the right of accused to have counsel present at lineup confrontations.[1] In defendants' view that right is rendered meaningless if counsel cannot observe the demeanor and listen to the initial response of the witness. In some situations such a limitation on the scope of counsel's activities may well affect the fairness of lineup proceedings; in the case before us, however, the restriction did not significantly diminish the protection bestowed by *Wade* and *Gilbert*, and we therefore conclude that defendants were not denied effective assistance of counsel.

The Supreme Court in *Wade* recognized the dangers with which lineup identification is fraught:

> But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. . . . A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that "[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined." Wall, Eye-Witness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

> Moreover, "[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." [Williams & Hammelmann, Identification Parades, Part I, [1963] Crim.L. Rev. 479, 482.]

388 U.S. at 228–229, 87 S.Ct. at 1933, 18 L.Ed.2d at 1158–1159.

The Court held that the presence of defense counsel at lineup proceedings can help overcome unfairness in at least two crucial respects. First, counsel can observe lineup procedures to detect whether unduly suggestive practices have been utilized.[2] As the Court notes, those involved in the lineup confronta-

---

1. The Supreme Court has limited the application of *Wade* and *Gilbert* to lineups conducted after the commencement of adversary judicial proceedings. Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. The FBI had initiated adversary judicial proceedings against Dollar and Banks by filing a criminal complaint charging them with the robbery of the Commissary. *See* Fed. R.Crim.P. 3, 4; cf. Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

2. Examples of prejudicial procedures cited by the Court in *Wade* include: placement of an Oriental suspect in a lineup of six men, the other five of whom were Caucasian; placement of a black-haired suspect among a group of light-haired persons; and placement of a teenaged suspect in a lineup with five persons over age 40. In the *Wade* case itself witnesses were able to observe the suspect in the custody of an FBI agent before viewing him with the other persons in the lineup.

tion may be unable to spot prejudicial procedures without the assistance of a competent attorney:

> In any event, neither witnesses nor lineup participants are apt to be alert for conditions prejudicial to the suspect. And if they were, it would likely be of scant benefit to the suspect since neither witnesses nor lineup participants are likely to be schooled in the detection of suggestive influences. Improper influences may go undetected by a suspect, guilty or not, who experiences the emotional tension which we might expect in one being confronted with potential accusers.

388 U.S. at 230–231, 87 S.Ct. at 1934, 18 L.Ed.2d at 1159.

Second, defense counsel can reconstruct the lineup identification procedures for the judge or jury at trial. An accused, even if capable of detecting suggestive features in a lineup, might be reluctant to testify. Through careful questioning of witnesses, however, defense counsel may lift the veil of secrecy that so often shrouds identification confrontations.

Although the Supreme Court discussed at length the reasons for presence of counsel at the lineup, the Court in both *Wade* and *Gilbert* failed to address itself to the question of what constitutes "the lineup" or "counsel's presence [at] . . . the lineup."

We decline to establish a *per se* rule as to whether or not an accused is entitled to have counsel present at interviews between government agents and witnesses, relating to, and in the context of, the lineup. We limit our holding to the facts of the case before us.

■ In the pre-trial identification of Dollar and Banks four witnesses were present. The government contends that a private conference with each witness after the witness had viewed the lineup was essential to prevent the initial response of one witness from prejudicing the response of another.[3] The witnesses were not prohibited from talking with counsel for the accused after giving their initial responses privately to the FBI agents. At trial defense counsel was able to cross-examine all witnesses concerning their private conferences with the agents at the lineup, and thereby to reconstruct the entire procedure for the jury. All witnesses questioned indicated affirmatively that the agents had neither attempted to influence their responses nor offered any suggestion whatever as to the identity of the participants in the lineup. All persons viewed in the lineup were of the same race, and defendants do not contend that the display was otherwise unduly suggestive. Under these circumstances we find that the procedure in question did comply with the constitutional specifications of *Wade* and *Gilbert*, and that defendants were not denied effective assistance of counsel. We therefore conclude that the district court did not err in refusing to suppress the identification evidence.[4]

■ We emphasize that similar procedures might require a different result if counsel is denied the opportunity to reconstruct all elements of the lineup and related agent-witness interviews, or

---

3. The lineup procedure in *Gilbert* was found to be defective, in part because it was conducted in an auditorium in which a large number of witnesses to several alleged crimes charged to Gilbert made wholesale identifications in each other's presence.

4. The record indicates that the able trial judge reached this decision after careful thought and research. In permitting the evidence to be introduced, the judge expressed grave doubts about the exclusion of counsel from the interviews at which witnesses' initial responses were elicited:

> Well, the Court is at a loss as to why that procedure was followed and it seems like poor judgment on the part of the FBI agents or the U. S. Attorney or whoever did it. The Court doesn't think that at this time it is contrary to the existing decisions of the Supreme Court, and it's not at this time going to suppress the evidence.

Record at 29–30.

if any witness indicates suggestive statements or actions by prosecution agents while counsel for the accused is excluded. Clandestine conferences may not be used for the purpose of evading the clear constitutional mandate of *Wade* and *Gilbert*.

## II

 Defendants also claim that the trial court erred in refusing to submit any of defendants' seven proposed jury charges on identification evidence. In its instructions to the jury the court stated:

> Now, the evidence in this case raises the question of whether or not the defendant was in fact the criminal actor and necessitates your resolving any conflict or uncertainty in the testimony on that issue. The burden of proof is on the prosecution, as I have said before, with reference to every element of the crime charged and this burden includes the burden of proving, beyond a reasonable doubt, the identity of the defendants or defendant as the perpetrators of the crime charged.

Record at 478. This charge encompasses an instruction on the law of identification evidence. Thus, defendants' claim of error rests solely on the proposition that the trial court did not sufficiently emphasize the necessity of proving identity beyond a reasonable doubt. The Supreme Court has provided, however, that "[o]nce the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion." *United States v. Bayer*, 1947, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654, 1658. In the case before us the district court made an accurate and correct charge; we conclude that the judge did not abuse his discretion in refusing to instruct the jury as requested by defendants.

## III

 Finally, defendants claim that the trial court erred in permitting the jury to disperse for lunch after the case

had been submitted to the jury for deliberation. Defendants' claim is without merit. In dispersing the jury for lunch the judge cautioned the jurors at least three times not to discuss the case. This Court in *United States v. Harris*, 5 Cir. 1972, 458 F.2d 670, stated the rule regarding refusal to sequester a jury:

> [O]ne who wishes to challenge a judge's allowance of juror separation must demonstrate a substantial likelihood that some prejudice did result from the refusal to sequester; the mere fact of separation over defendant's objections will not alone establish a claim to a reversal on the basis of abuse of discretion.

458 F.2d at 675. Defendants in the case before us offered no evidence to indicate that any prejudice resulted from the refusal to sequester. Thus, the trial court did not err in permitting the jurors to disperse for lunch.

The judgments of the district court as to defendants Dollar and Banks are affirmed.

Affirmed.