344 So.2d 1014 (1977)
STATE of Louisiana
v.
Eddie WRIGHT.
No. 58815.
Supreme Court of Louisiana.
April 11, 1977.
*1015 Barry F. Viosca, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Eddie Wright, was charged by bill of information with the October 20, 1974 armed robbery of Teddy Wilson, a bartender at the Cozy Corner Bar, on the corner of Melpomene Street and Claiborne Avenue in New Orleans. La.R.S. 14:64. He was convicted by jury, and subsequently sentenced as a multiple offender to serve ninety-nine years at hard labor.
On appeal defendant relies on four assignments of error for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1 and 2
Defendant's first assignment of error challenges the ruling of the trial judge denying him access to a list of the voting records of the prospective jurors in the petit jury venire compiled by various members of the district attorney's office. The existence of this list is acknowledged by the State in brief, but it neither admits nor denies that the list was used by the prosecuting attorney in selecting jurors from the general venire for service at defendant's trial. The State, in brief describes the list as follows:
"It has been the custom among the assistant district attorneys who try cases in the Criminal District Court for the Parish of Orleans to make certain handwritten, abbreviated notations on the two lists furnished to them [a list of all prospective jurors in the general petit jury venire for the month and a list of those prospective jurors who will be called to serve on the date of trial] regarding various characteristics of certain prospective jurorstheir responses on voir dire, the type of cases they served in, their voting records as revealed through polling, etc. for possible use by themselves and their fellow prosecutors in conducting their voir dire examinations in the cases they try as the month goes by."
Before jury selection began in the instant case, which was one of the last to be tried during that month, defendant moved the court for:
"* * * [A] copy or list of the records held by the office of the District Attorney which indicate how the prospective jurors voted in prior jury trials and the type of case heard by each of the prospective jurors * * *."
Defendant's request for this list was denied by the trial judge, who, in his per curiam to assignment of error number one, stated his reasons as follows:

*1016 "Article [786] of the Louisiana Code of Criminal Procedure states that the scope of voir dire examination is within the sound discretion of the judge. Parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them to exercise their right of peremptory challenge. State v. Clark [La.], 325 So.2d 802 (1976), State v. Jones [La.], 282 So.2d 422 (1973).
"In the instant case, although the court did not allow counsel an opportunity to study the state's records prior to voir dire examination the transcript reflects that counsel was given the opportunity during voir dire to make a limited inquiry as to whether a juror had served on a jury which heard the same type of case. Information on how prospective jurors voted would not produce grounds for a challenge for cause. Such an inquiry, although it may aid the attorney in exercising his peremptory challenges, transcends the reasonable limits allowed in a voir dire examination. It must be noted that records of the Clerk's office contain verdicts of cases tried each month. Although an onerous undertaking, counsel may ascertain the verdict brought back by a particular jury."
The State argues in brief that the trial judge's refusal to compel production of its records was a proper exercise of discretion, and additionally that the records requested by defendant constituted the work product of the State's district attorney's office, and as such were privileged and not subject to production, citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and Weatherford v. Bursey,___U.S.___, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).
The majority opinion in Weatherford stated that there is no "general" constitutional right to discovery in a criminal case. Ironically, it and one of the four dissenters both cited with approval Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), in which the high court stated:
"[But] although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, but cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it does speak to the balance of forces between the accused and his accuser. Cf. In re Winship, 397 U.S. 358, 361-364, 90 S.Ct. 1068, 1070-1073, 25 L.Ed.2d 368 (1970). [6] * * *
"[Footnote 6] This Court has therefore been particularly suspicious of state trial rules which provide non-reciprocal benefits to the State when the lack of reciprocity interferes with the defendant's ability to secure a fair trial. See, e. g., Washington v. Texas, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, [93 A.L.R.2d 733] (1963). Cf. Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149, 1180-1192 (1960)." 412 U.S. at 474, 93 S.Ct. at 2212, 37 L.Ed.2d at 87.
Otherwise, Weatherford provides no guidance in the instant case because it did not involve an attempt to discover material alleged to be the work product of an attorney.
The main thrust of the State's argument that the previous voting records of jurors compiled by the district attorney's office constitute undiscoverable work product of an attorney is based on Hickman v. Taylor, supra. Since defendant does not take issue with the proposition we will assume, for purposes of this case, that the materials sought constitute attorneys' work products.[*] Although Hickman was a civil case we agree that the holding in this extremely important decision does provide a *1017 sensible and acceptable standard for determining whether a court should order material such as that sought in this prosecution produced for inspection. In Hickman, the Supreme Court held that a party is not entitled to discover written statements in the files of the attorney for the adverse party or memoranda made by him in anticipation of litigation, without any showing of necessity for the production of such material or any demonstration that "denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice." 329 U.S. at 509, 67 S.Ct. at 392, 91 L.Ed. at 461.
Consequently, defendant was required to make in support of his motion proper showing that production of the voting records of the jurors was necessary in order to prevent undue prejudice to his case, hardship or injustice. In order to make such a showing, however, he would have been required to demonstrate that he could not practicably obtain information from other sources, and that the State intended to use it in selecting the jury. Had defendant done so, he should have been given the information before voir dire or else allowed to question the prospective jurors on the subject.
Although the State admitted possession of such information, it was not shown that the prosecuting attorney actually used it during voir dire. Nor did the defense attempt to demonstrate that it was unable to obtain the data for itself. The only real effort defendant makes to show that he was put at an unfair disadvantage upon voir dire is in connection with his second assignment which he has consolidated with the first for argument.
During the voir dire examination counsel for the defense asked:
"[BY DEFENSE COUNSEL]
"Q. Have any of you served on a jury trial previous to appearing in Court today involving an armed robbery?
"A. (A juror raises hand.)
"Q. Miss Jarrell, on one occasion or more than one occasion?
"BY MISS JARRELL:
"A. Just one.
"[BY DEFENSE COUNSEL]
"Q. What section of Court was that in?
"BY MISS JARRELL:
"A. It was Judge Braniff.
"Q. During the course of the trial that you have previously served on, was there an issue of question of identification of the perpetrators
"THE COURT:
I will not permit that.
"[BY DEFENSE COUNSEL]:
Your Honor, I feel
"THE COURT:
I ruled. Take your Bill of Exception.
"[BY DEFENSE COUNSEL]:
Let the objection be noted."
Defendant argues that this demonstrates an improper restriction upon his right to full voir dire examination of prospective jurors, La.Const. Art. I, § 17. We note first that the defense counsel did not attempt to determine how Miss Jarrell had voted in the previous trial. Had he been denied this right after making the proper showing referred to earlier, his assignments would have merit. Nevertheless, we agree that the question he was not permitted to ask appeared to be within proper bounds, and for this reason we ordered the record supplemented with more of the voir dire examination. Upon examining a transcript of the questioning of the panel including Miss Jarrell, we found no more instances in which defense counsel was denied information from a prospective juror. On the other hand, he was allowed to question all prospective jurors as to whether they had previously served on juries, what kinds of crimes were involved and to otherwise conduct a full voir dire examination.
Accordingly, we find no reversible merit in these assignments.

ASSIGNMENTS OF ERROR NOS. 3 and 4
Defendant contends that the trial judge erred in refusing to grant a mistrial or a new trial because of remarks made *1018 during rebuttal argument by the prosecuting attorney. However, during his closing argument defense counsel alluded to the fact that defendant previously had been acquitted of raping a woman he allegedly abducted from the bar during the armed robbery of which he was accused in the instant case. Defense counsel's apparent motive was to cast doubt upon the four eyewitnesses' testimony in the present case by implying that the rape case jury had been unconvinced by their identification of the defendant as the abductor. Defense counsel also pointed out to the jury that the abducted woman was not called as a witness in the instant case by the State. The prosecuting attorney's remarks were in essence an attempt to persuade the jury that they should not assume defendant was innocent of the armed robbery merely because he was acquitted of the rape charge or because the alleged rape victim failed to appear as a witness. Under the circumstances, since the defense counsel initiated the references to the other alleged crime, we conclude the State was also entitled to do so in rebuttal. Furthermore, if any prejudice occurred we find that it was cured by the trial judge's admonition to the jury that it was to attach no significance to either the acquittal or the trial of the defendant in the previous case or to speculate as to the cause of its outcome; but rather it was to decide solely upon the evidence in the present case whether the defendant was guilty beyond a reasonable doubt of armed robbery or a lesser included offense.
These assignments are without merit.
Accordingly, defendant's conviction and sentence are affirmed.
SANDERS, C. J., concurs in the decree.
SUMMERS, J., concurs in result.
NOTES
[*] In making this assumption, we expressly withhold judgment on whether the district attorney's compilation of the voting records of prospective jurors in previous trials is part of his work file and therefore privileged. On February 18, 1977, we granted writs to consider this question. State v. Holmes, La., 342 So.2d 672. The matter has been scheduled for hearing and will be decided in due course.