350 So.2d 370 (1977)
STATE of Louisiana
v.
Woodrow McGHEE, Van Richardson and Herman Borden.
No. 59365.
Supreme Court of Louisiana.
September 19, 1977.
Dissenting Opinion October 11, 1977.
*371 Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Thorne D. Harris, III, Arthur A. Lemann, III, Supervising Atty., New Orleans, Larry Samuel, Student Practitioner, Loyola Law School Clinic, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Henry Julien, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On the morning of June 22, 1975 three men entered a barroom in the New Orleans area called the Brown Derby. Two of the men were carrying pistols and a third a Winchester rifle. After entering, one of the gunmen took a position in the center of the barroom and stood guard over those patrons present. The two remaining gunmen then proceeded to climb over the bar and force the owners to hand over approximately $1,600.00 in cash and three hand guns. Thereafter the gunmen safely made their escape. Approximately six days later, a car with six male occupants was stopped by police for an investigation concerning an unrelated crime. Inside the car the police found the three hand guns which later proved to have been taken in the armed robbery of June 22nd. Upon further investigation by police three of the six occupants of the car (the present defendants McGhee, Richardson and Borden) were charged by bill of information with the armed robbery at the Brown Derby. After a trial by jury each defendant was found guilty and sentenced to serve fifty years at hard labor. Because we find merit in several of defendants' assignments,[1] we discuss only certain of them.

ASSIGNMENTS OF ERROR NOS. 1 and 12
Part of the evidence upon which the defendants were convicted was the testimony of several witnesses who each identified one or more of the defendants as participants in the crime. Two of the witnesses identified certain of the defendants both in court and at a pre-trial lineup and others made only in-court identifications. The procedure employed for witness identifications immediately succeeding the lineup viewing gives rise to the first issue we consider herein.
On September 3, 1975, twenty-five days after defendants had been charged with this crime by bill of information, two alleged witnesses, the bar owner and a patron, attended a lineup in which the three defendants and three other men were required to appear. Counsel for the defendants, being advised of the lineup, attended and were allowed to choose defendants' places in the lineup. Additionally, the lawyers were allowed to remain in the room with the witnesses while they viewed the suspects. However, defendants' attorneys were not permitted to be present when, following the viewing, the witnesses conferred with police officers to express their opinions concerning the lineup participants. Instead, each witness was separately taken into an adjacent room where identifications were made and recorded. Thereafter, the defense attorneys were informed of the results of the identifications.[2] This exclusion *372 of defense counsel from the actual identification is alleged by the present defendants to be a violation of their rights to counsel protected by the constitutions of both the United States and the State of Louisiana.
Our decision herein on this issue is controlled by our construction of the sixth amendment to the United States Constitution,[3] the U.S. Supreme Court's decision (and our interpretation thereof) in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and its companion cases Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), as well as Article I, section 13 of the Louisiana Constitution of 1974.[4]
In United States v. Wade, supra, the United States Supreme Court held that the sixth amendment's provision entitling a criminal defendant to the "Assistance of Counsel for his defence" requires that an accused's lawyer be afforded notice of and the opportunity to be present at a lineup held subsequent to indictment or bill of information. The Wade Court asserted that the United States Supreme Court cases have construed the sixth amendment guarantee to apply to all "critical stages of the proceedings" and that this included "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." 388 U.S. at 226, 87 S.Ct. at 1932. The Court further stated that "any pretrial confrontation of the accused" must be scrutinized "to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." 388 U.S. at 227, 87 S.Ct. at 1932.
The Court then went on to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation (the lineup) and the ability of counsel to help avoid that prejudice. Considering the high incidence of miscarriages of justice from mistaken identification, the degree of suggestion inherent in the manner in which the prosecution presents a suspect to witnesses for pre-trial identification, and the accused's inability to reconstruct or recount any unfairness that occurs at the lineup, the Court concluded that the post-indictment lineup was a critical stage of the prosecution at which defendant was as much entitled to aid of counsel as at the trial itself.[5] The court viewed the mere *373 presence of counsel as a prevention of prejudice and assurance of a meaningful confrontation at trial.
In Wade, defendant's attorney was not advised of, nor permitted to attend the lineup or any part thereof. Thus the court's ruling did not focus upon the anatomy of a lineup, nor did it have reason to specifically assert that the lineup which defendant's attorney should be allowed to attend includes the post-viewing session between witness and police. Nonetheless it seems very clear to us that the lineup as a stage of the proceedings against a charged defendant is made up of several interdependent parts: the suspect parade or assembly, the witness' viewing, the witness' reaction to the viewing, and the witness' verbal or written assertion of that reaction. The confrontation which Wade concluded was a critical stage of the prosecution can hardly be said to have terminated with the witness' viewing. The witness' reaction is surely a part of the viewing, and its communication is surely a part of the lineup. Furthermore, confrontation in the context of a "stage" of prosecution should rationally include not only a defendant's being placed for view before a witness for that witness' reaction (identification) but also, by virtue of his counsel's presence, the defendant's being entitled to have viewed the witness' condemnatory verbal or written identification. Surely this must be so if, as Wade says, counsel's presence at the lineup is necessary to facilitate meaningful cross-examination at a suppression hearing and/or at trial, and possibly to prevent, by his simple presence, otherwise improper influence or suggestion.
We conclude therefore that an application of Wade requires a finding that the sixth amendment to the federal constitution mandates the opportunity for counsel's presence at the entire post-indictment lineup, including the witness' response stage.[6]
Independent of our conclusion reached above based on the sixth amendment to the federal constitution and our interpretation of United States v. Wade, supra, the same result is dictated herein by Article I, section 13 of our own Constitution of 1974. It provides in pertinent part that "at each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court . .." For those reasons which prompted the United States Supreme Court in Wade to conclude that a post-indictment lineup is a "critical stage" of a criminal prosecution, we conclude that the post-indictment lineup is also a "stage" of the criminal proceedings under Article I, section 13 of the Louisiana Constitution of 1974. Thus an accused is entitled to the assistance of counsel at the lineup "stage" of the proceedings. We conclude today not only that an accused is entitled to the assistance of counsel at the lineup "stage" but also that part of this "stage" includes a witness' post-viewing response. We reach this conclusion for those same reasons we discussed in our interpretation of the Wade decision, supra.
The state's introduction at trial of evidence concerning the constitutionally deficient lineup proceedings warrants a reversal of the defendants' convictions and the ordering of a new trial. See, Gilbert v. California, supra. We therefore find that these three defendants were improperly denied their constitutional right to have counsel *374 attend the post-information lineup when their attorneys were excluded from the witness-police post-viewing response conference. This assignment, and the succeeding one, require reversal of these convictions.

ASSIGNMENT OF ERROR NO. 2
During the course of the trial, and particularly during voir dire examination of prospective jurors, the assistant district attorney referred to and repeatedly emphasized the presumption "that the person in the unexplained possession of property recently stolen is the thief". R.S. 15:432. The controverted voir dire comments were these:
"Now, ladies and gentlemen of the jury, one of the five presumptions in law is the fact that the defendant is innocent. There's another presumption, too, and that presumption is found in Title 15:432. Right alongside the fact that it says a defendant is innocent, it says that the person in the unexplained possession of property recently stolen is presumed to be the thief. That's a presumption of law."
Defendant objected to these statements but was overruled and the prosecutor continued in the same vein:
"Ladies and gentlemen, the presumption is that the person in unexplained possession of property recently stolen is presumed to be the thief. The reason why I'm bringing up this presumption is because you will remember one of the elements of armed robbery is that there must be a theft, and this presumption is that if you can find a situation where a person has property on him that's proved to be recently stolen and he can't explain why he has that property, then the law says he's presumed to be the thief."
Again the prosecutor emphasized the presumption when he stated to the jurors:
"Earlier, I read a presumption in the law. That presumption is as strong as the presumption that the defendant is presumed to be innocent, that he is just as innocent as any defendant who ever walked into a court of law. The presumption I give you is the presumption that a person found in the unexplained possession of property recently stolen is presumed to be the thief." (emphasis provided)
Defense counsel's objection was again overruled by the judge, and the prosecutor asked: "Ladies and gentlemen, can each of you accept that presumption?"
Defendants contend that these comments unconstitutionally prejudiced their cases because:
1) the presumption of R.S. 15:432 cannot be utilized in an armed robbery case, citing State v. Searle, 339 So.2d 1194 (La.1976);
2) the references violated defendants' right to remain silent in violation of the federal and state constitutions;
3) the presumption of R.S. 15:432 as written violates Article I, section 16 of the Louisiana Constitution;
4) the prosecutor's remarks violated Article I, section 16 of the Louisiana Constitution of 1974 because he incorrectly stated that R.S. 15:432 provides a presumption as strong as the presumption of innocence.
We note initially that the impact of the remarks on the trial cannot be underestimated. As indicated earlier, three hand guns taken in an armed robbery were discovered, not necessarily in the possession of these three defendants, but inside an automobile in which they and three others were riding. Since the principal evidence against the three defendants was the dubious identification testimony of three elderly witnesses, the prosecutor's repeated references to the presumptions at issue formed an important aspect of the state's proof in the case. For a juror possibly unimpressed by the identification evidence, the emphasized presumption was undoubtedly significant in his deliberations.
We pretermit discussion of the first three of defendants' arguments because we find argument number four clearly meritorious in light of our decision in State v. Wingerter, 339 So.2d 1 (La.1976).
State v. Wingerter, supra, and a similar case, State v. Searle, 339 So.2d 1194 (La. *375 1976) were handed down together and deal generally with the problem of the presumption of theft in R.S. 15:432. In the lead case, which involved a burglary, not a theft, State v. Searle, we fully amplified the rationale of our decision regarding presumptions. There we held that the judicially-created presumption that a defendant found in possession of property recently stolen in a burglary is presumed to have committed burglary violates due process. There we said at page 1202:
"It is now clear that the due process requirement of the federal constitution obliges the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that, accordingly, a state may not shift the burden of ultimate persuasion of an essential element of the crime charged to the defendant in a criminal case. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)."
In State v. Wingerter, supra, the Court relied on the Searle reasoning in a situation much like the one before us. There the assistant district attorney, almost identically to the prosecutor in the instant case, said that the presumption that a person in the unexplained possession of property is presumed to be the thief "is just as strongjust as strong as the presumption that these two people are innocent. . ."[7] We vacated defendant's conviction and held that:
"the assistant district attorney's remarks constituted reversible error because a criminal presumption against the defendant relating to an essential element of the crime charged can never be `as strong as' the presumption of innocence which the prosecution is required to overcome by proof beyond a reasonable doubt. La. Const.1974, Art. I, § 16; In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A presumption or inference against the defendant arising out of the exclusive and unexplained possession of recently stolen property, even if properly established, cannot shift the ultimate burden of persuasion upon an essential element of the crime to the defendant. La. Const.1974, Art. I, §§ 2, 13, 16; Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)." 339 So.2d at 3.
Precisely the same rule attaches in the case now before us. The prosecutor told the jury that the presumption of theft is "as strong as" the presumption that a defendant is presumed innocent, a statement that prejudiced defendants' constitutional rights to be presumed innocent and to be found guilty only if the state has proved them guilty beyond a reasonable doubt. For this reason, assignment of error number two has merit.

ASSIGNMENT OF ERROR NO. 3
Defendants contend that the trial court erred in limiting the scope of defense questions posed on voir dire examination. After defense counsel received responses to questions concerning whether the prospective jurors had previously served on juries, and whether such juries had reached verdicts, he posed the question, "what was the verdict of that case?" A state objection was sustained. That ruling is the subject of assignment of error number three.
Since the trial of this case in 1975, this issue, at least peripherally, has been raised *376 in this Court on two occasions. In State v. Wright, 344 So.2d 1014 (La.1977), the Court dealt with the question of whether a defendant is entitled to a list in the prosecutor's possession which revealed a prospective juror's past voting record. The court, assuming without deciding that the list was the "work product" of the state's attorneys, held that the list should be discoverable if the defendant makes the showing that 1) the prosecutor actually used the list in voir dire and 2) that the defendant could not obtain the information from any other source. However, the court also noted that, had defendant made the showing referred to above and been denied the right to question the prospective jurors as to their voting records, reversible error would have been demonstrated because due process would have been denied by allowing the state the non-reciprocal advantage of knowing the voting records. See 344 So.2d at 1017.
In State v. Holmes, 347 So.2d 221 (La. 1977) this Court held that since the defendant had not shown that he could not find the voting record information during voir dire, his request for the voting list was premature. The Court overruled past cases which had denied defendants the right to inquire into past jury service, verdicts reached, etc. during voir dire.
In the case at hand the voting lists are not in question. The only issue is whether defendants are entitled to know the verdict reached in past cases in which the prospective juror served. In Holmes this Court held that the constitutional right to full voir dire examination guarantees a defendant the right to ask this question. La. Const. art. I, § 17. Accordingly, the trial judge should have permitted the question.[8]
We need not pass upon whether this meritorious assignment of error requires reversal of the conviction (i. e. should Holmes and this decision be given retroactive effect) in view of the fact that a new trial is being ordered because of reversible error in connection with assignments of error one and twelve, and in connection with assignment number two.
For the foregoing reasons the convictions and sentences of defendants Woodrow McGhee, Van Richardson, and Herman Borden are reversed and the cases remanded for retrial.
SANDERS, C. J., and SUMMERS, J., dissent with written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
In the present case, the attorneys for defendants attended the identification lineup and monitored the procedure. However, they did not monitor the post-lineup conversation between the police officers and each of the witnesses. For this reason, the majority sets aside the conviction.
In a similar case, the identical contention was rejected by the United States Court of Appeals for the Fifth Circuit in United States v. Banks, 485 F.2d 545 (1973). I would follow that decision in the present case. As noted in that case, a private conference with each witness is required after the lineup to prevent the initial response of one witness from prejudicing the response of another. The identification can be fully tested at the hearing on the motion to suppress.
For the reasons assigned, I respectfully dissent.
*377 SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.
NOTES
[1] On Appeal defendants Borden and McGhee filed briefs in support of essentially identical assignments of error. Defendant Richardson adopted defendant Borden's brief. The numbering of the assignments we adopt is that offered by defendant Borden.
[2] The record in the present case shows that the defense attorneys received information to the effect that one witness at the lineup had identified two of the defendants and the other witness at the lineup had identified one. The record also shows, however, that they were not informed that the witness who identified only one of the defendants had also made a misidentification. This fact was discovered through cross-examination of that witness. For further discussion of the testimony of this witness, see footnote five.
[3] "In all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."
[4] "* * * At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. * * *"
[5] Although the record in the present case is not conclusive in this regard, we note that the likelihood of improper influence was present here, as indicated by the following cross-examination of one of the witnesses present at the lineup:

"Q. Do you recall the numbers of the people you picked out of the lineup?
A. Yes, number 4 and number 8. [Number 4 was one of the defendants; number 8 was not.]
* * * * * *
Q. Number 4 that you identified at the lineup, which one of those two people was he in the robbery? The one by the cage, or the one at the other end of the bar?
A. He was the one by the end of the bar.
Q. And number 8, where was he?
A. That was the one what shot at Frank. But they said that wasn't the number 8 man. But the one that shot at Frank was the little big-eyed fellow over there.
* * * * * *
Q. Do you see the individuals who committed that robbery in that photograph?
A. Yeah, this one here.
Q. What's his number?
A. Number 4.
Q. What other person?
A. Well, I got number 8. Number 8." (emphasis added)
[6] We are not unaware of the lower federal court cases which have confronted this same problem and desisted from adopting the per se rule we espouse herein. See: United States v. Wilcox, 507 F.2d 364 (4th Cir. 1974), cert. denied, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); United States v. Banks, 485 F.2d 545 (5th Cir. 1973), cert. denied, 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); Doss v. United States, 431 F.2d 601 (9th Cir 1970); United States v. Cunningham, 423 F.2d 1269 (4th Cir. 1970). Nor are we unaware of the United States Supreme Court's decision in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), wherein the Court found the rationale of the Wade decision to be inapplicable to a photographic identification due to the differences in the circumstances surrounding a photographic identification and a lineup.
[7] The full statements of the prosecutor in State v. Wingerter can be found at 339 So.2d at 2-3 and are quoted in part below:

"There's a presumption in the law, in addition to the fact that these two people are presumed innocent, as you well know, just like any other defendant that's come into a court of law. Side by side with that in our law there's a presumption in our law which says a person who is found in possession of property recently stolenO.K.in the unexplained possession that person is presumed to be a thief. Alright, the person who is found in possession of property, and that property is proved to have been recently stolen, and that person cannot explain why he or she has that property, then that person is believed or presumed to be the thief. That presumption, ladies and gentlemen is just as strongjust as strong as the presumption that these two people are innocent. . . ."
[8] Our decision today only concerns the permissibility of defense counsel's inquiring into the verdicts reached in past cases in which a prospective juror served because that was the only question concerning prior voting records posed by counsel in the present case. Consequently, we do not address what would be the next logical question, i. e. how the particular juror(s) voted in those past verdicts. An answer to that question would merely constitute dicta and therefore has not been provided in this opinion. However, it is evident, certainly in this author's view, that defense counsel should be permitted to inquire of a prospective juror how he or she voted as a member of prior juries. Otherwise, absent production of the District Attorney's list of compiled data on the prior voting records of the prospective jurors, defendant would be denied an unfettered opportunity to elicit information of a comparable nature to what the state has assembled prior to trial.