363 So.2d 494 (1978)
STATE of Louisiana
v.
Charles MARRERO.
No. 61901.
Supreme Court of Louisiana.
October 9, 1978.
*496 Arthur A. Lemann, III, Supervising Atty., New Orleans, Peter Franklin, Philip A. Costa, Student Practitioners, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Donald T. Giglio, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant was charged by bill of information with possessing a firearm after having been convicted of a felony, a violation of R.S. 14:95.1. After a jury trial, defendant was found guilty as charged and was sentenced to eight years at hard labor. On this appeal of his conviction and sentence, defendant relies on seven assignments of error.

ASSIGNMENT OF ERROR NO. 1
In a motion to quash defendant argued that he was not guilty of any offense set forth in R.S. 14:95.1, the pertinent part of which reads:
"A. It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony. . . to possess a firearm . . . ." (emphasis added)
Defendant contends that his conviction of distribution of heroin in 1971 is not a conviction of a felony under the Uniform Controlled Dangerous Substances Law because he was convicted in 1971 under the Uniform Controlled Dangerous Substances Act of 1970 which differs in significant respects from the Uniform Controlled Dangerous Substances Law enacted in 1972. Defendant relies on R.S. 14:3 to argue that R.S. 14:95.1 must be strictly construed to refer only to felony convictions under the Uniform Controlled Dangerous Substances Law of 1972.
Prior to a 1970 amendment, R.S. 40:961 through 40:984 were referred to as the Uniform Narcotics Drug Law. These statutes were amended and re-enacted as the Uniform Controlled Dangerous Substances Law by Acts 1970, No. 457, § 1 to contain R.S. 40:961 through 40:990. Louisiana Revised Statute 40:990 of the 1970 statute provided:
"This subpart may be cited as the Uniform Controlled Dangerous Substances Act."
By Acts 1972, No. 634 § 1, R.S. 40:961 through 40:1056 were amended and re-enacted to contain R.S. 40:961 through 995. By implication, former R.S. 40:961 through 1056 were repealed. Louisiana Revised Statute 40:995 as amended in 1972 provides:
"This part may be cited as the Uniform Dangerous Controlled Substances Law."

Defendant argues that because former R.S. 40:990 provided that the statutes may be cited as the Uniform Controlled Dangerous Substances Act, a conviction in 1971 is not a conviction under the Uniform Controlled Dangerous Substances Law as required by R.S. 14:95.1.
Defendant's argument is without merit. In the preamble to Acts 1970, No. 437, § 1, the legislature designated the act the Uniform Controlled Dangerous Substances Law; similarly, the title of the act was the Uniform Controlled Dangerous Substances Law. By indicating that it may be cited as the Uniform Controlled Dangerous Substances Act, the legislature's purpose in R.S. 40:990 seems to have been simply to provide a short title for the statute. It was designated in its very preamble and title as "Law." The reference in R.S. 14:95.1 to "Law" surely applies to the 1970 statute as well as to the one of 1972. Even if the word "law" were to be found nowhere in the 1970 statute, we would hesitate to find merit in this assignment because the same restrictions and penalties for distribution of heroin were provided under the 1970 "Act" as under the 1972 "Law" and defendant could not be heard to argue that R.S. 14:95.1 making it unlawful for a person to possess a firearm who has been convicted of a violation of the Uniform Controlled Dangerous Substances Law does not apply to his conviction under the 1970 statute.

*497 ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in denying his motion to suppress the evidence. At the hearing on the motion, defendant moved that the court shift the burden of proof to the state to show that the search of defendant's bedroom and the seizure of the gun were valid. The court denied the motion and defense counsel objected. In the assignments of error submitted to the trial judge, however, defendant assigned as error only the denial of the motion to suppress and not the trial judge's refusal to shift the burden of proof.
Louisiana Code of Criminal Procedure Article 844 requires a party to designate those errors which are to be urged on appeal. Article 920 limits the scope of appellate review to errors designated in the assignments of error and those discoverable by a mere inspection of the pleadings. Because defendant failed to urge as error the trial judge's denial of the motion to shift the burden of proof, this issue argued in brief is not before this Court for review.
The merits argument in support of this second assignment is that the entry into and the search of defendant's apartment was illegal, rendering the gun thereafter found inadmissible. Defendant contends that because the police officers did not announce their authority and purpose before entering his apartment, his arrest was illegal and the evidence seized on the premises inadmissible.
The police officers first went to defendant's apartment after his ex-girlfriend complained that defendant had beaten on her door and threatened her. When the officers arrived, three men were leaving the apartment and one was standing in the door. When questioned, all four men denied being Charles Marrero. Defendant claimed to be Lawrence Marrero and said that his brother Charles was in California. The officers then returned to defendant's former girlfriend's house and arranged for her to telephone Charles Marrero and to keep him on the line so that she, and they, could identify him. When the officers returned to defendant's apartment, they knocked on the door, heard him respond, "Come in," and entered through the unlocked door. The officers found defendant on the bed, talking on the telephone. They took the phone from him and had his former girlfriend identify him as Charles Marrero.
An officer is required to announce his authority and purpose when he breaks "open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance." He "need not announce his authority and purpose when to do so would imperil the arrest." La.Code of Crim.Pro. art. 224. In this instance, the officers did not make a forcible entry into the defendant's apartment but entered with his consent. Though they did not identify themselves as police officers before entering and defendant only learned of their identity when he saw their uniforms, the officers used no subterfuge or force to gain entry. Instead, they entered with the express consent of the defendant. Consequently, there was no illegal entry and the ensuing arrest was not illegal on that account.
Defendant also argues that the search of his bed and nightstand after he was arrested was not valid as a search incident to a lawful arrest because the search went beyond the area of his "immediate control." Because the officers searched the mattress and found the gun after he was handcuffed, defendant contends the search was illegal.
It is not clear from the testimony at the hearing on the motion to suppress whether the defendant was in fact handcuffed before the officers searched in and around the bed. One officer testified that he told defendant he was under arrest, searched the bed and then found the gun. Only after the search did he handcuff defendant. The second officer, however, stated that after removing defendant from the bed by force, they handcuffed him, then searched the bed and the nightstand nearby.
*498 The search incident to a lawful arrest approved in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) is justified by the need to protect the police officer and to prevent frustration of an arrest. Under Chimel, an officer may search the person arrested for weapons and also the "area into which an arrestee might reach in order to grab a weapon or evidentiary items." The Court in Chimel construed the phrase "within his immediate control" to mean "the area from within which he might gain possession of a weapon or destructible evidence."
Even if the defendant in this case had been handcuffed before the officers searched and found the gun, it appears that at the time of the search, defendant was standing very near the bed and showed considerable reluctance to move from it. The arrest, removal from the bed, handcuffing, and search all occurred within moments of one another. Defendant's being handcuffed did not insure that he could not reach for and grab the weapon. Consequently, the search did not extend beyond the area from which defendant might have gained possession of the gun and was therefore not illegal.

ASSIGNMENTS OF ERROR NOS. 4 AND 8
In these related assignments, defendant contends that the trial judge erred in denying his motion requesting the voting records of the prospective jurors in prior criminal trials and in not allowing counsel to question the jurors on voir dire about their prior jury service. After his motion requesting access to the voting records was denied, defense counsel inquired on voir dire whether any jurors had served on a jury that month. After one juror responded that he had, the trial judge ruled that counsel could not ask when the juror had served but only whether he had prior experience. Defense counsel then asked if that jury had reached a verdict. The trial judge ordered the juror not to answer the question and found it irrelevant and immaterial. In his per curiam, the trial judge concluded that under State v. Holmes, 347 So.2d 221 (La.1977), the state was not required to disclose the information because the defendant could obtain it from the Office of the Indigent Defender Program. In brief, defendant argues that the records maintained by the Office of the Indigent Defender Program are not adequate substitutes because that office can not accumulate comprehensive juror verdict information inasmuch as many defendants are represented by lawyers other than those assigned to the Office of the Indigent Defender Program.
In State v. Wright, 344 So.2d 1014 (La. 1977), this Court pretermitted the issue of whether a list of the prospective jurors' voting records was a "work product" and held that it was discoverable only if the defendant could demonstrate denial of the list would prejudice the preparation of his case or result in hardship or injustice. To make such a showing, defendant would have to establish that he could not obtain the information from other sources and that the state intended to use it in selecting the jurors. If the defendant were to make the necessary showing, he should either be given the information before voir dire or be allowed to question the prospective jurors about their prior service.
In the case at hand, defendant alleges that he was denied both access to the list and the opportunity to question the jurors about their prior service. Although defendant alleged in his pre-trial motion that the information was not otherwise available and that the state intended to use it in selecting the jurors, defendant did not demonstrate that the state in this case did in fact enjoy that non-reciprocal advantage. On the trial of the motion defendant did not establish that the state intended to use the information. Nor did he show during voir dire that the state had used or was using such a list.
Although the general right to question jurors about their prior service was recognized in Wright, decided April 11, 1977, it was not until State v. Holmes, supra that this Court specifically overruled jurisprudence *499 which had restricted voir dire examination. The trial of this case was held June 9, 1977, after Wright but before Holmes. However, because the defendant failed to make at least one of the requisite showings under Wright that the state intended to or actually had used the list the trial judge did not err in denying the motion for the list and in restricting the scope of the voir dire examination.

ASSIGNMENT OF ERROR NO. 6
In this assignment, defendant contends that the trial judge erred in permitting the state to allege in the bill of information more than one of defendant's prior convictions for a felony enumerated in R.S. 14:95.1. He contends that because R.S. 14:95.1 requires only that the defendant have been convicted (one such conviction being sufficient), the listing of the two prior convictions was reversible error.
An essential element of the crime defined in R.S. 14:95.1 is a defendant's prior conviction of one of the enumerated felonies. In this case, defendant was twice convicted of distribution of heroin in 1971. A prior conviction is an essential element of the crime defined in R.S. 14:95.1 and allowing the state to allege more than one previous conviction in the bill of information is not reversible error.[1]State v. Sanders, 357 So.2d 492 (La.1978).

ASSIGNMENTS OF ERROR NOS. 5 AND 13
Defendant contends that the trial judge erred in allowing the state to amend its answer to the request for a bill of particulars on the morning of trial. The defendant on March 1, 1977 filed an application for a bill of particulars requesting any inculpatory statements made by the defendant and intended to be used at trial by the state. On March 21, 1977, the state responded that it had no inculpatory statements. On the morning of trial, however, the state moved to orally amend the answer to the bill of particulars to include a possibly inculpatory statement by the defendant to the arresting officer on the date of his arrest that he was not Charles but Charles' brother Lawrence Marrero. The trial judge, over defense counsel's objection, allowed the proposed amendment. In brief, the state contends that the statement is not inculpatory and that the amendment in no way prejudiced the defendant in the preparation of his defense.
Regardless of whether this statement, unrelated to the substance of the offense charged but indicating evasiveness on defendant's part, is properly denominated inculpatory, we do not find that defendant was prejudiced by the state's having waited until the morning of trial to amend the answer to the bill of particulars in this respect. Consequently, we will not reverse defendant's conviction on this account.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
Affirmed.
NOTES
[1] But see the concurring opinion in Sanders, supra.