696 So.2d 115 (1997)
STATE of Louisiana
v.
Patricia O'SHEA and Michelle Niemeir.
No. 97-K-0400.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
Rehearing Denied July 15, 1997.
*116 Harry F. Connick, District Attorney, Jeanette Flippen Ward, Assistant District Attorney, Marcia Hannewalt, Law Clerk, Parish of Orleans, New Orleans, for Plaintiff/Relator, State of Louisiana.
Richard A. Tonry, Michael C. Ginart, Kim Cooper Jones, Law Offices of Tonry & Ginart, Chalmette, for Defendant/Respondent, Patricia O'Shea.
Eric A. Bopp, Edward S. BoppA Law Corporation, Arabi, for Defendant/Respondent, Michelle Niemeir.
Before KLEES, ARMSTRONG and MURRAY, JJ.
MURRAY, Judge.
In this writ application, the State seeks relief from the trial court's grant of defendants' motions to suppress evidence and statements. Upon review of the testimony presented and after consideration of the application and both oppositions, we grant the writ and reverse the judgment below. The stay order previously entered is vacated, and the matter is remanded for further proceedings.

FACTS
The only evidence presented in this matter was the testimony of Louisiana State Trooper John Schmidt, assigned to the South District Narcotics Section. The officer testified that Dominick Datcharo[1] had been arrested on drug charges in August 1995, and subsequently had agreed to "work off" these charges by cooperating with the State Police. During the course of a continuing investigation, which also involved the federal Drug Enforcement Agency, both Mr. Datcharo and an unnamed informant had stated that drugs were sometimes stored at Mr. Datcharo's girlfriend's apartment. Surveillance was instituted outside of the gated apartment complex where Patricia O'Shea lived, and the authorities maintained contact with both Mr. Datcharo and the other informant for several months.
During their investigation, the State Police learned that despite his apparent cooperation, Mr. Datcharo continued to engage in drug transactions that were not within the purview of their undercover operation. Near the end of February 1996, Mr. Datcharo borrowed Ms. O'Shea's car which the informant then used to drive to Houston and pick up fourteen pounds of marijuana. Mr. Datcharo accepted this shipment from the informant and was arrested at a supermarket parking lot near his girlfriend's apartment complex. After Mr. Datcharo's arrest, he said he had been at Ms. O'Shea's apartment prior to his receipt of the drugs, and he gave Trooper Schmidt her apartment number. He also admitted that he had hidden the shipment of marijuana between two air conditioner units that served her apartment complex, and this evidence was seized by the police.
Trooper Schmidt, accompanied by a DEA agent and another trooper, then went to the apartment Mr. Datcharo had said was occupied by his girlfriend, Ms. O'Shea. He knocked on the door, and a woman's voice said "come in." The investigators entered the unlocked door and identified themselves to Ms. O'Shea, who was seated on the sofa in the living room. As Trooper Schmidt explained that they were investigating "Rocky" Datcharo, who had just been arrested for drug dealing, he saw a clear plastic bag on the coffee table right in front of Ms. O'Shea. The officer recognized the contents as marijuana.
Ms. O'Shea's roommate, Michelle Niemeir, then arrived at the apartment with two *117 friends. Trooper Schmidt again explained their presence and, after brief questioning, the two friends were permitted to leave. Ms. O'Shea and Ms. Niemeir were asked if they would consent to a search of their apartment; Trooper Schmidt admits he might have said that if they did not consent, he would get a search warrant. Both women agreed to permit a search and signed a written consent form. They were both advised of their rights and placed under arrest for possession of the marijuana on the coffee table, although Ms. O'Shea said it belonged to Mr. Datcharo, who had left it there when he visited earlier. Ms. Niemeir and Ms. O'Shea then accompanied the officers as the apartment was searched, pointing out the location of contraband and identifying some of the items as cocaine and LSD. In later statements, Ms. O'Shea said all of the drugs belonged to Mr. Datcharo, and Ms. Niemeir denied any knowledge of drugs on the premises because she actually spent very little time at that apartment. However, a document found during the search indicated that the apartment was leased by both women.

PROCEEDINGS IN THE TRIAL COURT
Ms. O'Shea was charged with simple possession of LSD, ecstasy, codeine and marijuana (one count of each), while Ms. Niemeir was charged with one count of possession of cocaine. Both defendants moved for a determination of probable cause and filed motions to suppress the evidence and statements obtained in connection with the arrest and search. At the hearing on these motions, the district judge participated in questioning the witness, especially concerning the role played by the unnamed informant.
After the court heard Trooper Schmidt's testimony, as summarized above, the State submitted on the preliminary hearing and motion to suppress evidence, but asked that the motion to suppress statements be held open for testimony by the officers who had taken those statements. Without a ruling on this request, the parties were directed to address their arguments to three specific issues regarding the source, timing and reliability of an informant's disclosures when used to justify a warrantless search, as well as whether a "consent to search is invalid if the initial intrusion was without probable cause." The State's motion for time to submit briefs was denied.
The State then orally argued that Trooper Schmidt had reasonable suspicion to approach the defendants' apartment based upon knowledge acquired throughout the months-long investigation, including not only details from the informant but also from their surveillance of Mr. Datcharo. In addition, the information linking this apartment to recent drug activity had been received in the vicinity of the apartment complex and less than thirty minutes before the apartment was entered. The State further argued that because neither force nor subterfuge was used to enter the apartment and the officers had obtained valid consent for the search, the motions to suppress should be denied.
Counsel for the defendants pointed out that there had been no substantiation of the informant's reliability, and that Trooper Schmidt could not say with any certainty how long it had been since he was told drugs were kept in "an" apartment where Ms. O'Shea lived. Furthermore, the defense contended, after Mr. Datcharo was arrested at another location and the recent drug shipment had been seized, there were no exigent circumstances which justified the failure to obtain a search warrant. In the absence of either probable cause or a warrant to search, and because the officers did not identify themselves before entering the apartment, the defendants asserted that both the evidence and the statements obtained as a result of the illegal entry had to be suppressed.
The trial court ruled that there was no probable cause for the defendants' arrest and that the search and seizure was illegal, requiring suppression of both the evidence and the inculpatory statements. In oral reasons, the judge explained:
I find that any and all information provided by the confidential informant identified in this case as Datcharo was unreliable and unworthy of belief. I also find that ... he was acting as a triple agent in that ... he was giving information to law enforcement... [and] also giving information to the *118 criminals about the activities of law enforcement, which is a situation that is not all too uncommon in this type of an operation. In fact, I question the integrity of this entire investigation and quite frankly there were parts of the testimony of this trooper that I just frankly did not believe. I am not casting any aspersions on this agent's credibility. Perhaps he was led down a primrose path by this informant, but I do find some inconsistencies in his testimony and I find some things regarding his testimony and regarding the way this investigation is conducted that I frankly do not believe are true.
* * * * * *
I further find evidence that leads this court to believe that the informant, Mr. Datcharo, planted at least the marijuana in this apartment.... Now, whether he was an informant at the moment that he was arrested or whether he was a suspect at the moment that he was arrested, for purposes of this ruling is really of no moment. I find that once he became an agent of the State, all the laws that interpret the Fourth Amendment apply to him as an informant.
Because the information Trooper Schmidt claimed to have relied upon was thus found unreliable and uncorroborated, the court decided that the police had neither reasonable suspicion nor probable cause to approach the apartment. Additionally, "[w]hen he knocked on the door he should have announced his presence and his authority and not just invited himself in once he was told to enter." Because the entry was determined to be illegal, the consent to search was found invalid. The court therefore suppressed the evidence and use of the defendants' statements, and this writ application followed.

DISCUSSION
As argued in the court below, the State asserts that Trooper Schmidt lawfully entered the defendants' apartment in response to Ms. O'Shea's invitation, which establishes that there was no unreasonable intrusion on her privacy. In any case, the State contends that based upon the totality of the circumstances, Trooper Schmidt had probable cause to believe drugs were in the apartment and that once Mr. Datcharo had been arrested, his relationship with Ms. O'Shea meant that evidence might be destroyed before a search warrant could be obtained. Once inside, a further search was justified by the marijuana sitting in plain view, and both defendants freely consented to that search. The State therefore asserts that the trial court's ruling should be overturned.
In their oppositions, the defendants assert that neither Mr. Datcharo nor the unnamed informant were reliable sources of information, as the trial court specifically found, nor had there been any surveillance of this apartment to corroborate their allegations; only the outer gate of the complex had been watched. Furthermore, they contend that there was nothing other than the vague information in August 1995 to suggest there were drugs in this particular apartment and therefore, no probable cause existed to enter, much less search, the apartment. They further assert that the subsequent consent to search was invalid, not only because of the coercive circumstances, as in State v. Ragsdale, 381 So.2d 492 (La.1980), but because the initial entry was illegal, as in State v. Ferrand, 95-1346 (La.12/8/95), 664 So.2d 396. It is argued that the district court's ruling was neither manifestly erroneous nor an abuse of discretion, and thus not subject to reversal, especially since Trooper Schmidt's credibility was questioned by the judge.
We find that the trial court erred, as a matter of law, in the determination that the officers' entry into this apartment was illegal. Although the court found that Trooper Schmidt should have announced his identity prior to opening Ms. O'Shea's door, this requirement was rejected by the Louisiana Supreme Court in State v. Marrero, 363 So.2d 494 (La.1978).
In Marrero, officers were investigating a report from the defendant's ex-girlfriend that he had beaten her. They originally went to the defendant's apartment, but the men who were there all denied being the defendant. The officers left the apartment, got the victim to call the defendant, and then went back to the defendant's apartment and knocked on the door. The defendant, who was then on *119 the telephone with his girlfriend, called "come in," and the officers entered and arrested him. On appeal, the defendant argued his arrest was not legal because he would not have voluntarily consented to the officers' entry if they had properly identified themselves when they knocked. The Court found, however, that the entry was lawful:
An officer is required to announce his authority and purpose when he breaks "open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance." He "need not announce his authority and purpose when to do so would imperil the arrest." La.Code of Crim.Pro. art. 224. In this instance, the officers did not make a forcible entry into the defendant's apartment but entered with his consent. Though they did not identify themselves as police officers before entering and defendant only learned of their identity when he saw their uniforms, the officers used no subterfuge or force to gain entry. Instead, they entered with the express consent of the defendant. Consequently, there was no illegal entry and the ensuing arrest was not illegal on that account.
Marrero at 497 [emphasis added].
As in Marrero, Trooper Schmidt and the other officers used no subterfuge or force to gain entry into the defendants' apartment, and the officers identified themselves as they entered the living room. Ms. O'Shea had the options of not answering the knock on her door or of first inquiring as to the identity of those outside, or she could have gone to the door to answer it and refused entry to the officers. Under these circumstances, Trooper Schmidt would not have had any reason to enter and he would not have seen the marijuana lying on the coffee table. The testimony concerning the officers' entry was neither challenged on cross examination or controverted by any other evidence, nor was it questioned by the trial court in the oral reasons for judgment. Thus, the district court's determination that the manner of entry was illegal because the officers did not identify themselves was an erroneous conclusion of law.[2]
Once inside the apartment, Trooper Schmidt saw the bag of marijuana lying in plain view in front of Ms. O'Shea, justifying a warrantless seizure of this evidence. State v. Tate, 623 So.2d 908, 917 (La.App. 4th Cir. 1993), writs denied, 629 So.2d 1126, 1140 (La.1993). The remainder of the evidence supporting the charges against Ms. O'Shea and Ms. Niemeir were seized pursuant to a consensual search.
Consent is an exception to the warrant requirement, with the burden on the State to show that it was free and voluntary. State v. Hall, 94-2051, p. 6 (La.App. 4th Cir. 3/16/95), 652 So.2d 1086, 1089. Here, Trooper Schmidt advised both defendants he wanted them to consent to a search of the apartment but that he would probably get a warrant if they did not consent. The defense presented no evidence to contradict this testimony, but instead argues that consent was not free and voluntary. The court below made no factual finding regarding the defendants' consent, and did not address this issue in its oral reasons.
The statement that a warrant will be obtained if an individual does not agree to a search is not coercion or fraud which would vitiate consent. State v. Franklin, 95-1876, p. 6 (La. 1/14/97), 686 So.2d 38, 41. Furthermore, in both Ragsdale and Ferrand, the cases relied upon by defendants, it was the "exploitation of the prior illegal entry," Ragsdale, 381 So.2d at 498, which primarily tainted *120 the subsequent consent to search, not the officers' alleged threat that a warrant would be obtained. Because the officers lawfully entered this apartment, as explained above, there is no basis for the claim that the consent to search was other than free and voluntary.
For these reasons, the motion to suppress evidence should have been overruled, establishing probable cause for arrest based upon the drugs found in the apartment. In addition, no basis for suppression of the statements given subsequent to arrest was shown. Therefore, the trial court's grant of the defendants' motions is reversed, and our prior stay order is now vacated.
WRIT APPLICATION GRANTED: JUDGMENT REVERSED; STAY ORDER VACATED.
NOTES
[1] This is the phonetic spelling used in the transcript and in the State's writ application; the name appears as "Ditcharo" in both defendants' oppositions.
[2] We reject the defendants' additional contention that the officers unlawfully entered the gated apartment complex, necessitating exclusion of the evidence based upon State v. Karston, 588 So.2d 165 (La.App. 4th Cir.1991). Although they quote a snippet of Trooper Schmidt's testimony to establish that Mr. Datcharo's marijuana shipment was seized outside of the complex, he clearly testified only that those drugs were not found inside or in the immediate vicinity of this apartment. It is equally clear from the testimony, taken as a whole, that Mr. Datcharo had hidden that marijuana between two air conditioners serving these apartments, necessitating the officers' entry into the complex to seize it.