514 So.2d 561 (1987)
STATE of Louisiana
v.
Ricard A. ALEXIS, III.
No. KA-6926.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 1987.
*562 William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for appellee.
Glass & Reed, Robert Glass, Lori R. Fregolle, New Orleans, for appellant.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
GULOTTA, Chief Judge.
Ricard A. Alexis, III pled guilty to possession of cocaine with intent to distribute (R.S. 40:967) and received a five year suspended sentence with active probation. Under State v. Crosby, 338 So.2d 584 (La. 1976), he appeals from the denial of his motion to suppress evidence seized in a warrantless search of his residence, contending that his father's consent to search the premises was tainted by police officers' illegal intrusion into his home. Because we conclude the trial judge erred in apparently finding that the father freely and voluntarily consented, we reverse defendant's conviction and vacate his sentence.
On May 2, 1986, in response to an informant's tip that Alexis was selling cocaine at 4013 Hamburg Street, New Orleans police officers placed the residence under surveillance. The officers observed apparent drug transactions in which Alexis emerged from the house, met an individual, and exchanged a small object for money. When Alexis crossed the street and walked into the courtyard of a housing project out of the view of the police, an officer passed in an unmarked car. Alexis appeared to recognize the car, however, and placed an object in his mouth. The officer thereupon chased Alexis, caught him, advised him of his Miranda rights, performed a pat-down search, but found no contraband. The police officers then decided to seek consent to search the Alexis home for illegal drugs and paraphernalia.
At the hearing on the motion to suppress, Detective Pedro Marino, the lead officer of the surveillance team, testified that he and his officers knocked on the front door of the Alexis residence, identified themselves as police, and were admitted into the living room where they waited until defendant's father, Ricard Alexis, Jr., appeared shortly afterward. Marino stated that after Mr. and Mrs. Alexis, their son Dracir, and their daughter assembled in the living room, the defendant was brought inside and all family members were advised that they were under investigation and informed of their Miranda rights. According to Marino, the elder Mr. Alexis freely and voluntarily signed a form giving his consent to a search of the house after the surveillance and detention of his son were explained to him. Cocaine was found in the master bedroom in the ensuing search.
Marino testified further that neither he nor any officer in his sight had brandished *563 a gun, intimidated or coerced anyone, or threatened to arrest the Alexis family members unless the consent forms were signed. The officer also stated that he had not seen any officer walk out of the living room area until Mr. Alexis gave his consent. Marino's fellow policeman, Detective Lloyd Clark, corroborated Marino's testimony that he did not at any time tell any member of the household that he or she would be arrested unless permission to search were given.
In contrast to the officers' testimony, however, defendant's brother, Dracir Alexis, testified that the police rushed into the home with their guns drawn after his sister opened the door. According to Dracir, two police officers watched him and his friend in the living room while three other officers and his sister went to the rear of the house to get his parents. About fifteen minutes later, the officers returned to the living room with his mother, father, and sister. After his brother Ricard was brought into the room in police custody, the officers told his father that they needed his consent to search the house. According to defendant's brother, the police made it clear that if his father's consent to search were not given then the police could obtain a search warrant and would take all of the family to jail if drugs were ultimately found on the premises. Dracir further testified that the police also said that they were interested in his brother and that if his parents gave their consent to search and drugs were found, then only defendant would be taken to jail and the rest of the family would be left alone. Dracir stated that his father signed the consent form after his brother denied that there were illegal drugs on the premises.
Defendant's father, Ricard Alexis, Jr., testified that he was lying in bed and watching television next to his soundly sleeping wife when three or four police officers appeared in his bedroom doorway with his frightened and crying daughter behind them. Mr. Alexis stated that the officer in front had his gun drawn, told him to "freeze", and asked if there were any guns in the room. Mr. Alexis testified that he was scared and asked permission to take a nitroglycerin tablet for a heart condition.
According to Mr. Alexis, at the time he signed the consent form, he heard drawers being opened and paper rattling in other rooms of the house and recognized that he might as well sign the form because it seemed the police officers were already searching the residence. Consistent with his son Dracir's testimony, he stated that even though the police did not say that they were going to take him to jail unless he signed the permission to search, they did tell him that if he did not sign the form they could get a search warrant and take the family members to jail if drugs were ultimately found. Before signing the consent form, the elder Alexis asked his son Ricard if there were drugs in the house and was told there were none.
Although he gave no specific reasons for denying the motion to suppress, the trial judge apparently concluded that the drugs seized in the residence were admissible as the fruits of a valid consent search. Defendant contends, however, that the consent obtained from his father was an exploitation of the police's illegal conduct in unreasonably intruding into the house and detaining his family. Defendant points out that his father was never specifically advised that he had the right to withhold his consent and that the signing of the consent form immediately followed the police's flagrant misconduct in violating the privacy of Mr. and Mrs. Alexis, rousting them from their bed at gunpoint, searching parts of their room, reading Miranda rights to the entire family, and telling them they were all under investigation.
On the other hand, the State argues that the consent given to the police was free, voluntary, and informed. In support of this argument, the State points out that the officers did not threaten to arrest anyone unless the consent form was signed, but instead reasonably explained to the family members that they might be arrested if a warrant were obtained and illegal drugs found. The State further contends that the prime factor prompting Mr. Alexis's consent was the "scurrilous lie" of his son that *564 no illegal drugs were on the premises. According to the State, the denial of the motion to suppress was thus properly based on the credibility of the witnesses and the weight of the evidence.
A warrantless search, though per se unreasonable, may be justified under the consent exception to the warrant requirement of the Fourth Amendment. State v. Owen, 453 So.2d 1202 (La.1984); State v. Helwig, 489 So.2d 296 (La.App. 4th Cir. 1986), writ denied 495 So.2d 301 (La.1986). When the State seeks to rely upon consent to justify a search, however, it has the burden of proving that the consent was given freely and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Pautard, 485 So.2d 909 (La.1986); State v. Owen, supra. The validity of the consent thus depends on whether or not it was free of duress or coercion, either express or implied. State v. Linkletter, 345 So.2d 452 (La.1977), cert denied Linkletter v. Louisiana, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978). The issue of the consent is factual and may be determined by the credibility of conflicting witnesses as well as the surrounding circumstances. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Cathey, 493 So.2d 842 (La.App. 5th Cir. 1986), writ denied State v. Cathey, 500 So.2d 419 (La.1987), cert denied Cathey v. Louisiana, ___ U.S. ___, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987). The trial judge's factual determination on the voluntariness of the consent is therefore afforded great weight on appeal. State v. Ossey, 446 So.2d 280 (La.1984), cert denied Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Edwards, 434 So.2d 395 (La.1983); State v. Smith, 433 So.2d 688 (La.1983); State v. Helwig, supra.
It is true that there was conflicting testimony about whether or not the police officers drew their guns, walked beyond the living room before consent was given, or began searching the house without Mr. Alexis's authorization; however, the issue of consent in the instant case does not turn on a simple credibility decision. Rather, the problem confronting us is whether the police exerted undue duress or coercion upon the father by stating that they would arrest only his son if illegal drugs were found in a consent search, but might arrest the entire family if consent were withheld and a warrant had to be obtained before the search.
Although the testimony of the police officers and Mr. Alexis supports a conclusion that the police did not threaten to arrest Mr. Alexis if he did not sign the consent form, the State concedes in brief and oral argument that the officers did tell Mr. Alexis that the entire family could be arrested if a warrant were obtained and illegal drugs were found, but that only Ricard III would be arrested if illegal drugs were found in a consent search. According to the State, the following testimony of Dracir Alexis shows that the officers "... [R]easonably and accurately ... outlined to Mr. Alexis the alternatives that were available":
"He made it clear to us that if we didn't give him permission to search the premises, that he could obtain a warrant and if any drugs were found on the premises, that he would take us all to jail. He also made it clear that Ricard was the only one they were interested in. And if they gave consent to search the house that they would onlyand if they found drugs they would only take Ricard and they would leave the rest of us alone."
Despite the State's portrayal of this statement as a reasonable and accurate outline or explanation by the police of "alternatives" available to Mr. Alexis or of "potential consequences" that might follow if a search warrant were obtained, we conclude that it constituted illegal duress or coercion that vitiated Mr. Alexis's free and voluntary consent to the search. By offering the "carrot" of arresting only Ricard III if illegal drugs were found in a consent search while wielding the "stick" of possibly arresting the entire family if a warrant were necessary, the officers effectively pressured Mr. Alexis into signing the consent form. This is particularly true when considering the surrounding circumstances *565 involved in the instant case. This inducement, even if made in good faith, is a form of police activity that cannot be tolerated where Fourth Amendment rights are involved. In the wake of the reading of Miranda rights to the entire family and Mr. Alexis's poor health, the "alternatives" offered to him amounted to an illegal bargain for his consent that destroyed his freedom of choice and rendered involuntary his decision to allow the search.
In so holding, we reject the State's argument that defendant's denial that drugs were in the house prompted his father's consent. Although this assurance from the son may have been a factor in the totality of circumstances, it fails to negate the considerably stronger coercion exerted on Mr. Alexis by the police. Defendant's lie to his father was insignificant compared to the police's statement that only Ricard III would be arrested if consent to the search were given, but that the entire family might be arrested if a warrant had to be obtained and illegal drugs were ultimately found.
Accordingly, we conclude the trial judge erred in denying the motion to suppress. Defendant's conviction and sentence following his plea of guilty are reversed and vacated. The motion to suppress is granted, and the matter is remanded for further proceedings consistent herewith.
CONVICTION REVERSED; SENTENCE VACATED; REMANDED.