686 So.2d 38 (1997)
STATE of Louisiana
v.
Floyd Carmichael FRANKLIN.
No. 95-K-1876.
Supreme Court of Louisiana.
January 14, 1997.
*39 Margaret Smith Sollars, Thibodaux, for applicant.
Richard Phillip Ieyoub, Attorney General, Joseph L. Waitz, Jr., District Attorney, Mark David Rhodes, for respondent.
LEMMON, Justice.[*]
In this case involving convictions on five counts of attempted murder and one count of armed robbery, we granted certiorari primarily to consider whether defendant's motion to suppress the fruits of the crime seized in a warrantless search of his residence should have been granted. While both lower courts concluded that the evidence should not be suppressed, they did so for different reasons, the trial court on the basis of defendant's girlfriend's voluntary consent to the search and the court of appeal on the basis of the inevitable discovery exception to the exclusionary rule.
Facts
Defendant's convictions involved a 1:00 a.m. armed robbery of a That Stanley store, while the store was closed for business. On duty was the night manager, Barry McGuire, and four stock clerks.
When the doorbell rang at the rear of the store, the employees assumed it was a truck driver making a delivery. McGuire, who had the keys to the store and access to the safe, opened the rear door. The other employees then observed a robber, who was wearing a ski mask and red jumpsuit, holding a gun to McGuire's head. The robber placed the four employees in the freezer. After forcing McGuire to open the store's safe and removing its contents, the robber ordered McGuire into the freezer with the other four employees, placing a forklift machine against the freezer door. The employees, after waiting several minutes, opened the freezer door from the inside and pushed the door until they opened it enough for them to climb out of the freezer.
An immediate investigation determined that $1,800 in food stamps, over $11,000 in cash and $44,000 in checks were missing from the safe. The investigating officers found a dark blue ski mask and a red jumpsuit *40 at different locations within several blocks of the store.
Suspecting an "inside job," the police focused their attention on McGuire. Two days after the robbery, McGuire gave a videostatement identifying defendant as the robber and admitting that he immediately knew defendant by his voice.[1] McGuire then accompanied police to defendant's residence, whereupon McGuire was released.
Without obtaining either an arrest or a search warrant, the police surrounded the residence and knocked on the front door. Someone peeked out the window, and the officers heard a lot of rustling inside. When defendant came to the door, officers immediately placed him under arrest and transported him to the police station. Shortly thereafter, two officers asked defendant's girlfriend, who also resided in the house, for consent to search the residence. The officers told her that if she refused to consent, no one would be allowed to leave the residence until the police obtained a search warrant. She signed a consent form, authorizing the search of the residence and car.
The search revealed a jacket in the bedroom closet, which an officer recognized as the jacket reported missing by a store employee on the night of the robbery. In the pocket of the jacket were check stubs with the robbery victim's name and address. The police also recovered $3,127.75 in cash from a bag.[2]
Confronted with this evidence, defendant admitted planning the robbery, but claimed he changed his mind and was given the bag to hold by the man who committed the robbery.
The trial court denied the motion to suppress, finding that the girlfriend validly provided consent for the warrantless search. After trial, the jury found defendant guilty of armed robbery and five counts of attempted second degree murder.
On appeal, the intermediate court affirmed in an unpublished opinion. As to the motion to suppress the evidence seized from defendant's house, the court concluded that the girlfriend's consent was vitiated by threats "amounting to coercion, duress and overreaching by the police."[3] The court further concluded that there were no exigent circumstances justifying the warrantless search, noting that the police, even after approaching the residence and arresting defendant, could have secured the premises while one of the officers obtained a search warrant.
Nevertheless, the court of appeal affirmed the conviction, concluding that the motion to suppress should have been denied on the basis of the doctrine of inevitable discovery. Noting that the police clearly had probable cause to obtain a search warrant, the court concluded that the police, if the girlfriend had not consented to the search, would have obtained a warrant after securing the residence and inevitably would have discovered the evidence that was not easily susceptible of destruction.
One judge dissented from the application of the inevitable discovery doctrine. The dissenting judge observed that one officer testified he had decided not to apply for a search warrant because he believed (subjectively but erroneously) there was not probable cause to obtain a warrant. Because the officer had apparently rejected the acquisition of a warrant as a legitimate means of discovering the evidence, the dissenting judge concluded that the prosecution failed to prove the evidence inevitably would have been discovered.
This court granted certiorari to consider the intermediate court's application of the inevitable discovery exception to the exclusionary rule. 95-1876 (La.12/8/95), 664 So.2d 409.
*41 Validity of Consent
While we granted certiorari to address the inevitable discovery issue, that doctrine only comes into play when the pertinent evidence is the product of illegal government activity and would have been discovered inevitably by lawful means without regard to the illegality. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Upon examining the record, we have determined that the evidence was not the product of illegal government activity, but rather was obtained legally by means of valid consent. We therefore need not address the inevitable discovery issue.
At the hearing on the motion to suppress, Officer Belanger testified that he asked defendant's girlfriend to sign a consent-to-search form, telling her only that if she refused permission, the police "would have to obtain a search warrant" and would "surround the house, nobody would be allowed to leave" until the officer returned with the warrant. He denied using any force, threats or coercion to obtain her signature, stating that "she read, understood, and then signed" the form without hesitating, emphasizing that "she wasn't a part of any robbery."
On the other hand, the girlfriend (who by that time was defendant's wife) testified that she signed the consent form after "they threatened me and told me if I didn't let them do it that they were going to bring me to jail." She identified Officers Belanger and Lopez as the officers who threatened her, added that they told her she would go to jail on the same charges for which defendant was arrested if she did not let them into the residence before the officer returned with the warrant.[4]
Officer Lopez testified he explained to the girlfriend that if they went through the procedure of securing the residence and obtaining a search warrant, and then found stolen goods, they would arrest her as an accessory. He added that he further told her they would stop the search at any time she requested them to stop. He denied using any form of coercion to obtain the consent.
A statement by police officers that they will apply for a warrant if refused consent for a search does not necessarily vitiate the voluntariness of the consent. State v. MacDonald, 390 So.2d 1276 (La.1980); 3 William F. LaFave, Search and Seizure § 8.2(c) (3d ed.1996). The prosecution has the burden of proving valid consent. State v. Green, 376 So.2d 1249 (La.1979). The determination of the voluntariness of the consent turns on the overall facts and circumstances of the particular case. State v. Edwards, 434 So.2d 395 (La.1983). The trial judge's factual determination on this issue is entitled to great weight on appellate review. Id.
Under the girlfriend's version of the events, her consent was coerced. However, the trial judge rejected her version and credited that given by the police officers. According to the officers, they did not use threats or coercion, but merely told the girlfriend they would secure the house and obtained a warrant if she refused to consent. While Officer Lopez admitted he told her she would be arrested as an accessory if their search ultimately yielded evidence of the armed robbery in the home where she lived with defendant, the statement was not made in the context of a promise to forego arrest in exchange for consent or of a threat to make the arrest if she failed to consent.[5] Rather, the statement was made in the context of information on what to expect if the search, either with a warrant or with consent, yielded evidence of an armed robbery.
Under the officers' version, the trial judge had a reasonable basis for finding valid consent. The court of appeal erred in overturning that primarily factual decision.[6]
The conviction of armed robbery should be affirmed on the basis of valid consent to search.
*42 Sufficiency of the Evidence of Attempted Murder
A conviction of attempted second degree murder requires proof of specific intent to kill. La.Rev.Stat. 14:30.1 and 27. Here, defendant committed the robbery with a gun, but did not shoot or attempt to shoot any of the victims. Rather, he placed five men, one of whom was his close relative, in a freezer that opened from the inside. He made good his escape by placing a heavy forklift machine against the freezer door. After waiting a brief period, two of the five men, exerting a "lot of effort," pushed the door partially open to accomplish their escape.
A rational trier of fact could not have concluded beyond a reasonable doubt, on the basis of this evidence viewed in the light most favorable to the prosecution, that defendant specifically intended to kill the five men, including his relative. State v. Captville, 448 So.2d 676 (La.1984). There was at least a reasonable doubt that defendant only intended to assure himself a safe getaway.
Defendant's convictions and sentences on five counts of attempted second degree murder must be reversed.

Decree
The judgment of the court of appeal affirming the conviction and sentence for armed robbery is affirmed. The judgment of the court of appeal affirming the conviction and sentence for five counts of attempted second degree murder is reversed, and defendant is discharged on these charges.
CALOGERO, C.J., concurs in part, dissents in part and assigns reasons.
VICTORY, J., concurs in part, but dissents from the reversal of defendant's convictions for attempted second degree murder.
CALOGERO, Chief Judge, concurring in part, dissenting in part.
I believe that the majority is correct in concluding that there is insufficient evidence in the record to establish that the defendant possessed specific intent to kill the store manager and the four employees. However, I disagree with majority's conclusion that the search of defendant's home was consensual.
First and foremost, I disagree with the majority's reading of the record. The majority says that "Officer Lopez admitted that he told [the defendant's girlfriend] that she would be arrested as an accessory if their search ultimately yielded evidence of the armed robbery in the home where she lived with the defendant." Maj. op. at 41. Based upon this characterization of Officer Lopez's testimony, the majority then concludes that the officer's statement "was not made in the context of a promise to forego arrest in exchange for consent," but rather "was made in the context of information of what to expect if the search, either with a warrant or with consent, yielded evidence of an armed robbery." Id.
However, according to the record, Officer Lopez did more than inform the girlfriend of "what to expect" with or without a warrant, as is evidenced by the following colloquy at trial between the prosecutor and Officer Lopez:
Q. Did you inform at any time or suggest in any way to Miss Bergeron that if she did not sign the consent to search form that she would be charged with a crime?
A. I told Miss Bergeron that if we have to go through the procedures to apply for a search warrant and we would secure the residenceif we would have to apply for a search warrant, and if the judge signed the search warrant, and we found contraband that would leave or implicate Mr. Franklin in the robbery, she would be arrested as an accessory.
(R. at p. 70) (emphasis added). The obvious inference from Officer Lopez's testimony is that an arrest would follow only if the police had "to go through the procedures to apply for a search warrant." Further, Officer Lopez's own actions belie the majority's conclusion, as even though the warrantless search did in fact yield evidence of the armed robbery, neither Officer Lopez nor anyone else arrested the girlfriend as an accessory to the armed robbery. Further, Officer Lopez admitted at the suppression hearing that he harbored doubts that he had probable cause *43 to search the home at the time at which he sought the girlfriend's consent. Under these circumstances, it appears that the officer's statement was calculated to overbear the girlfriend's will by the threat of arrest and separation from her four children who also occupied the home if she did not consent to the search. As observed by this nation's highest court, consent that is "the product of official intimidation or harassment is not consent at all." Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). Therefore, in my view, the court of appeal was correct in concluding that the search was nonconsensual.
Further, although the majority does not reach this issue, I conclude that the court of appeal erred in finding the inevitable discovery doctrine applicable to the search at issue. As noted above, Officer Lopez, the Chief of Detectives of the Houma Police Department, candidly testified that he believed that he did not have probable cause to search the defendant's home. The record also reveals that the police were not in the process of preparing an affidavit or applying for a warrant at the time that they entered the defendant's home.
The inevitable discovery doctrine permits the admission of evidence, which otherwise would have been excluded for police misconduct, if the prosecution can establish, by a preponderance of the evidence, that the tainted evidence "ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). In the instant case, given Officer Lopez's doubts about his probable cause showing and the absence of any effort to obtain a warrant, the State simply cannot establish by a preponderance of the evidenceor by anything more than conjecturethat the police would have reassessed their case and inevitably come at their evidence through independent lawful means.
Accordingly, for the reasons given above, I dissent.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part II, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] According to other testimony, McGuire was defendant's uncle or cousin.

When McGuire refused to testify at trial, the prosecutor offered the statement as that of a co-conspirator, but the trial judge excluded the evidence.
[2] Defendant's girlfriend testified that the money found in the house was their savings, providing proof of an insurance settlement for her car damage of $1,171.22. She claimed she kept the money in her house to avoid losing her welfare payments.
[3] As noted later in our discussion of the motion to suppress, the court of appeal seemed to accept the girlfriend's version of the request for consent, which was greatly different from the officers' testimony that the trial judge found credible.
[4] The girlfriend also testified that the police during the next day threatened to take her children from her, but admitted they made no such threat on the day of the search, which was the only time relevant to the validity of her consent.
[5] Contrast State v. Green, 376 So.2d 1249 (La. 1979), in which the police obtained the defendant's girlfriend's consent to search the residence by threats to arrest her for abetting a criminal if she refused consent.
[6] In United States v. Bolin, 514 F.2d 554, 559-61 (7th Cir.1975), the only authority cited by the court of appeal in support of its decision, the defendant's consent was obtained during a custodial interrogation by implications that his girlfriend would be arrested if he did not consent.