744 So.2d 173 (1999)
STATE of Louisiana
v.
Brian A. PEREZ.
No. 99-K-2063.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1999.
*174 Harry F. Connick, District Attorney, Orleans Parish, Jacques LeBlanc, Assistant District Attorney, New Orleans, Louisiana, Counsel for Relator.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MOON LANDRIEU.
PLOTKIN, Judge.
On March 29, 1999, the State filed a bill of information charging defendant-respondent Brian Perez with one count of possession of cocaine, La. R.S. 40:967. He was arraigned and pled not guilty on May 21, 1999. On June 28, 1999, after hearing testimony, the trial court granted defendant's motion to suppress the evidence, one rock of crack cocaine, and a statement. This timely writ application by the State followed.

STATEMENT OF FACTS:
The first witness at the motion to suppress hearing was Officer Johnny Young. He testified that, on February 9, 1999, at approximately 1:40 p.m., he and his partner, David Wade, observed defendant's vehicle in the vicinity of St. Claude or Claiborne Avenue. The vehicle did not have a license plate "displayed," so the officers initiated a traffic stop. After the officers had defendant exit his vehicle and informed him that no license plate was displayed, defendant responded that his vehicle had a temporary tag and showed the officers the temporary tag, which had fallen down out of the rear window.
Nonetheless, Officer Young ran the vehicle identification number and defendant's driver's license number through the NCIC computer. Although the computer check indicated that the vehicle was not stolen, it showed that there was an outstanding warrant for defendant's arrest arising from a traffic violation in St. Bernard Parish. The officers then arrested defendant but stayed with him at the scene for approximately thirty minutes while they waited for confirmation from St. Bernard that the warrant was still outstanding. When confirmation was received, the officers informed defendant of his Miranda rights and transported him to Central Lockup for processing.
*175 When they arrived at the lock-up, defendant, who had been handcuffed since his arrest, exited the back of the police car. According to Officer Young, as he looked down toward the seat, defendant blurted out, "That's not mine." In accordance with usual procedure[1], the officers then searched the police vehicle and found a piece of crack cocaine under the cushion where defendant had been seated. Again according to Officer Young, defendant then made another statement, not in response to any questioning, that he had purchased the cocaine from a man named Antonio or Antoine at the corner of Forstall and North Prieur. On cross-examination, Officer Young testified that the defendant did not waive his rights but that any statements were not made in response to questioning.
During cross-examination, Officer Young stated that he could not independently recall on what street the traffic stop occurred. He admitted that, once the officers "saw that the vehicle's temporary tag had fallen down" and that defendant had insurance and a valid driver's license, no traffic citations were issued. At that point, defense counsel questioned Officer Young regarding the initial police report and the gist report that were prepared in connection with the defendant's arrest. According to the police report prepared by Officer Young's partner, the defendant was stopped at Caffin and N. Claiborne "due to a temporary plate being obscured." When asked to explain the discrepancy between the gist report and his testimony that the temporary plate was not "displayed" Officer Young testified that "obscured" meant "you can't see. It's out of sight."
Officer Young was also questioned about the narrative portion of the police report. That portion stated:
The officers learned upon approaching the above vehicle that there was a temporary tag in the rear window. The reason for the above stop was that the officers could not see the above tag due to the window tint that was bubbling due to above tag being in place. No citations were issued.
Officer Young stated again that he did not observe the temporary tag in the window; he was obtaining defendant's license then returned to the patrol car to run defendant's license number and the vehicle identification number.
Defense counsel also cross-examined Officer Young at some length about the exact sequence of events when the defendant exited the police car at Central Lockup. According to the police report, defendant said "It's not mine" only after Officer Wade had lifted the cushion in the back of the police car. The report also showed the stop occurred at 10:00 a.m. At this point in cross-examination, defense counsel on the record asked that the witness be instructed not to look at the district attorney for answers to questions.
The State did not call Officer Young's partner to testify. Defendant then took the stand and testified that he had just purchased the vehicle and was driving around when he was stopped on Claiborne Avenue. The police told him that he was being stopped because of an illegal U-turn. Defendant denied that the temporary tag had fallen out of the window and stated, in fact, that it had just been taped to the window by an employee of the car dealership. Defendant then identified the bill of sale for the vehicle, which was dated February 9ththe day of the traffic stop. Defendant testified, in fact, that he had only purchased the car some fifteen to thirty minutes before the traffic stop. Defendant denied making any statements about buying drugs but admitted saying "It's not mine" after the police officer found something on top of the seat in the patrol car and asked him, "What is this?".
*176 After Officer Young and the defendant testified, defense counsel argued the officer's credibility was in serious question because of his inability to recall facts and the contradictions between his testimony and the police report. Defense counsel further argued that the statement must be suppressed because the police report showed that defendant did not waive his rights. The State responded that Officer Young consistently testified he could not see the temporary license tag, for whatever reason, and therefore that the initial stop was valid. The State further argued that the officers had the right to check defendant's license for outstanding warrants; once a warrant for defendant's arrest was discovered, the ensuing arrest was valid. The State further argued that, according to Officer Young, defendant's statement was spontaneous and thus should not be suppressed.
In ruling, the trial court stated that, "having heard the testimony of the officer in this case, the Court finds it to be riddled with contradictions and inconsistencies." The court then found no probable cause for defendant's arrest and suppressed the evidence and statement.

DISCUSSION:
The State is now before this court arguing that there was an articulable basis for the traffic stop according to the testimony of Officer Young and that, because the initial stop was valid, the subsequent arrest based on the outstanding warrant was valid. With regard to the suppression of defendant's statement, the State argues that defendant's 5th Amendment right against self-incrimination was not violated because the statement was made voluntarily.
The State suggests that any question about Officer Young's credibility "is one to be left for the trier of fact." Of course, the State is correct that issues of credibility are to be left to the trier of fact; however, the trial judge is the trier of fact at a motion to suppress hearing. Here, the trial judge found the police officer not credible. Considering that Officer Young's testimony regarding the basis for the traffic stop was contradicted by the police report and that his demeanor was not goodas evidenced by defense counsel's request on the record that he be instructed not to look at the district attorney before answering questionswe cannot say that the trial judge's finding was manifestly erroneous. Therefore, this court must accept that there was not a sufficient basis for the traffic stop of the defendant's vehicle based on the lack of a displayed temporary tag.
Nevertheless, despite the officer's lack of credibility as to the circumstances of the traffic stop, we must reverse the trial court's ruling. Although the State failed to make the argument in its application, State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282, guides our decision. In Hill, an outstanding warrant was discovered after the police ran a computer check of the defendant's name, which they obtained during an investigatory stop which was based on neither reasonable suspicion nor probable cause. The trial court suppressed evidence seized after the defendant was arrested pursuant to the warrant.
This court affirmed the trial court, finding that the arrest could not be valid unless the initial stop was valid. State v. Hill, 97-1012 (La.App. 4 Cir.9/17/97) 700 So.2d 551. The Supreme Court reversed, stating that the defendant's arrest pursuant to a valid warrant was sufficiently attenuated from the initial stop to fall within an exception to the fruit of the poisonous tree doctrine. The court reviewed jurisprudence from the United States Supreme Court, particularly Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975), in which the Court enunciated a multi-factor test to consider whether evidence impermissibly seized should be suppressed. Our supreme court noted:

*177 The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment. [Footnote omitted.]
Hill, pp. 3-4, 725 So.2d at 1284. The court then applied the Brown factors, conceding that, while there was no temporal break, the computer check that showed the outstanding arrest warrant was an intervening circumstance sufficient to dissipate the taint of the wrongful stop. The court specifically rejected a "but for" causation test that would have found the evidence inadmissible because the police learned the defendant's name only during the illegal stop. The court also analyzed the last Brown factor, the flagrancy of the police misconduct, stating:
To this end, we note that the testimony of officers Elsensohn and McCabe at the suppression hearing did not reveal a "quality of purposefulness" in their conduct, which consisted of performing a Terry stop and frisk on an unknown individual whom they observed standing about on a street corner; nor is there any indication that the officers' conduct was "calculated to cause surprise, fright, or confusion." Brown, 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428. Thus, even if the Terry stop exceeded the officers' authority, the police conduct was not particularly egregious and did not amount to a flagrant abuse of police power. To the contrary, under the particular facts of this case, we ... find that, once the officers knew of the outstanding arrest warrants, they would have been derelict in their duty not to arrest the defendant. The officers' conduct in this case does not rise to the level of flagrant misconduct within the meaning of the jurisprudence, yet the gravity of the government's interest in apprehending wanted individuals is overpowering. Because the exclusionary rule is designed to prevent the use of evidence tainted by flagrant police misconduct in order to deter law enforcement practices violative of the Fourth Amendment, we find that considering the circumstances of this case, suppression of the disputed evidence would not serve the policies behind the exclusionary rule, nor contravene the protections provided by the Fourth Amendment.
Hill, pp. 9-10, 725 So.2d at 1287.
The instant case resembles Hill quite closely. The officers did not conduct a search immediately following the traffic stop. They did not exploit the fact that the computer showed a warrant for defendant; according to defendant's statement, the officers kept him at the scene until they had confirmed that the warrant was still valid. The recovered cocaine was found in the police car at Central Lockup, where the defendant had been transferred following the legal arrest. Accordingly, we hold that the computer check of defendant's identity dissipated the taint of the wrongful stop, allowing the officers to arrest defendant lawfully; and the trial court erred in holding that the cocaine was the fruit of an unlawful seizure.
Turning to the issue of defendant's statement, the State had the burden of proving that it was freely and voluntarily given, not the product of threats, promises, coercion, intimidation or physical abuse. State v. Seward, 509 So.2d 413 (La.1987); State v. Brooks, 505 So.2d 714 (La.1987), cert. denied sub nom Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Daliet, 557 So.2d 283 (La.App. 4 Cir.1990). To establish the admissibility of a statement made by an accused person during custodial *178 interrogation, the State must prove that the accused had been advised of his or her Miranda rights and that he or she waived those rights prior to interrogation. Brooks; Daliet. The determination of a statement's admissibility is within a trial court's discretion, and it should not be disturbed unless it is clearly unsupported by the evidence. Id.
In State v. Johnson, 482 So.2d 186 (La. App. 4 Cir.1986), writ denied, 486 So.2d 749 (La.1986), however, this court noted that a voluntary, spontaneous statement is admissible without Miranda warnings, even if the defendant is in custody when the statement is made. See also State v. Jackson, 600 So.2d 739 (La.App. 4 Cir. 1992).
The State bears the burden of showing that the statement was made after a valid waiver of constitutional rights or was spontaneous. Officer Young testified that defendant did not waive his rights. Moreover, because the trial court found the officer not to be particularly credible as a witness and presumably rejected any testimony that defendant either made a statement or did so spontaneously, the State did not bear its burden of showing that any statement made at Central Lockup was admissible. There is no error in the trial court's ruling.
The writ is granted, the trial court's ruling on the motion to suppress evidence is reversed, and its suppression of the statement is affirmed.
WRIT GRANTED IN PART AND DENIED IN PART.
NOTES
[1] The officer stated that the police car is searched before and after anyone is placed in the back of the car.