I, PATRICIA RIVET MURRAY, Judge.
The sole issue raised in this criminal appeal is whether the trial court erred in denying the defense’s motion to suppress evidence. Finding no error, we affirm the conviction. However, because we find an error patent, we vacate the sentence and remand for resentencing.
STATEMENT OF THE CASE
On October 31, 2002, Daren Hopkins was charged by bill of information with one count of possession of marijuana with the intent to distribute, a violation of La. R.S. 40:966(A). On November 18, 2002, Mr. Hopkins was arraigned and entered a plea of not guilty. On February 20, 2004, following three pre-trial hearings, the trial court, in a written judgment, denied the defense’s motion to suppress.[1] On April 5, 2004, when he appeared for trial, Mr. Hopkins withdrew his former plea of not guilty and entered a plea of guilty, reserving his right to appeal from the adverse motion to suppress ruling pursuant to State v. Crosby, 338 So.2d 584 (La.1976).[2] The trial court accepted the plea and stated that Mr. Hopkins was 12to be sentenced to five years, suspended, and placed on two years active probation. This appeal follows.
STATEMENT OF THE FACTS
On October 8, 2002, at approximately 8:00 p.m., the Sixth District officers set up a surveillance of the intersection of Thalia and South Gayoso Streets.[3] The police had received complaints of narcotics trafficking at this location. Officer Melvin Williams conducted the undercover surveillance; his backup was an eight-man task force. Officer Williams observed Mr. Hopkins in the intersection along with other people in the area. As Officer Williams watched, an unknown subject approached Mr. Hopkins and engaged him in conversation. The subject handed Mr. Hopkins currency. Mr. Hopkins walked over to a blue Mercury Sable, which was parked on Thalia Street, and punched a code into a keypad on the vehicle, which unlocked the door. He opened the car door, retrieved a yellow bag from under the driver’s seat, removed an object from the yellow bag, walked back to the unknown subject, and handed over the object to the subject. The unknown subject then walked away on Thalia Street. A few minutes later, another unknown subject walked up to Mr. Hopkins, who at that point was standing by a red car with some other people. Another conversation ensued, and Mr. Hopkins again was handed currency. Mr. Hopkins then repeated the chain of actions — walking to the blue Mercury, punching a code into the keypad, opening the door, remov *710 ing an object from the yellow bag, and giving the object to an unknown subject.
As he was conducting surveillance, Officer Williams apprised the takedown units of what he was observing and described the two unknown subjects who 1¡¡apparently bought drugs from Mr. Hopkins. However, neither of those subjects was apprehended by the backup officers.
Two of the backup officers, Officers Richard Welch and Joseph Williamson, were advised to conduct the stop of Mr. Hopkins. Those officers detained Mr. Hopkins, patted him down, advised him he was under investigation for narcotics activity, and advised him of his Miranda rights. At the instruction of Sergeant Terry Wilson, who was supervising the operation, those officers escorted Mr. Hopkins over to the blue car for questioning by Sergeant Wilson. Mr. Hopkins stated to the officers “you got me, I got some weed in the car.” Mr. Hopkins then provided the officers with the code needed to unlock the car door. Officer Williamson retrieved a yellow bag containing numerous baggies of marijuana from under the driver’s seat. It was from this same location that Officer Williams, had observed Mr. Hopkins was obtaining the objects, which information was relayed by Officer Williams to the backup officers during his surveillance.
After seizing the marijuana, the officers arrested Mr. Hopkins. In a search incident to the arrest, the officers found a small quantity of marijuana on Mr. Hopkins. When the officers questioned Mr. Hopkins as to where he lived, he gave them numerous addresses. Approximately one-half hour later, the police contacted Mr. Hopkins’ probation officer, who provided the police with Mr. Hopkins’ correct current address, which was 1821 Touro Street. At that address, Detective Paul Coleman and Sergeant Wilson interviewed Mr. Hopkins’ girlfriend, Elonda Brown, who lived there with Mr. Hopkins. After Ms. Brown signed a consent to search form, the officers searched the residence and found approximately two pounds of marijuana in the bedroom on the top shelf of a closet in a tool box. The|4officers also found male clothing and a bill addressed to Mr. Hopkins with the same address.
Ms. Brown testified at one of the motion hearings that the police identified themselves as probation officers, averring that they had to search the house because Mr. Hopkins had violated the terms of his probation. She admitted signing the consent form, but she testified that she did so only after the police had finished searching the residence.
Mr. Hopkins also testified at one of the motion hearings. He admitted that there was marijuana in both his car and the toolbox at his house; however, he claimed that the yellow bag was in the tool box and that the brown bag was under the car seat. He denied selling drugs, making any incul-patory statement, or having any marijuana on his person. He also stated that when the police arrived at the intersection, they surrounded his car and “came straight” to him, leaving the other people in the area alone. Finally, he averred that he was placed in a police car and driven around on the Westbank while the police were looking for his brother’s house. When a radio message came in stating that marijuana had been found at the Touro Street residence, the police ceased this attempt.
ERRORS PATENT
A review of the record for errors patent reveals one error. Mr. Hopkins entered a plea to violating La. R.S. 40:966(A), relative to possession of marijuana with the intent to distribute. The plea was tendered and accepted under La. C.Cr.P. art. 893, and the trial court advised Mr. Hopkins that, if he fulfilled the *711 terms of his probation, he would “have the opportunity to have this matter removed” from his record. According to the transcript of the plea and sentencing hearing held on April 5, 2004, defense counsel asked whether since the plea had been accepted funder Art. 893, “the Court [would] waive imposition of sentence. and order Mr. Hopkins to go enroll in probation pursuant to that article.” Acceding to this request, the trial court stated that it was “going to defer sentencing, but the sentence will be five years.” This language in the transcript falls under La. C.Cr.P. art. 893(D).[4] To the extent that the trial court deferred sentencing and informed Mr. Hopkins that his conviction could be set aside if he satisfactorily completed probation, such action was improper because La.C.Cr.P. art. 893(D)(1)(b) prohibits such action when a defendant is convicted of violating' La. R.S. 40:966(A), as Mr. Hopkins was in this case.
According to the sentencing minute entry, the trial court imposed a sentence of five years at hard labor, then suspended that sentence and placed Mr. Hopkins on two years active probation, a permissible action pursuant to La.C.Cr.P. art. 893(A).[5] The waiver of rights form executed by Mr. Hopkins showed that he | ^agreed to receive a five year suspended sentence and to be placed on probation. The probation referral form signed by Mr. Hopkins states that the court imposed a five year sentence, then suspended that sentence, and placed him on probation. The formal commitment order signed by *712 the trial judge also states that a five-year sentence was actually imposed, then suspended. Although it appears that the sentence which the court ultimately imposed was legal, the trial court misinformed Mr. Hopkins that his conviction could be removed from his record. That statement was legally erroneous under La.C.Cr.P. art. 893(D)(2). Contrary to what the trial court informed Mr. Hopkins, his conviction of violating La. R.S. 40:966(A) cannot be dismissed. For this reason, we vacate Mr. Hopkins’ sentence and remand to allow him the opportunity to withdraw his guilty plea.
DISCUSSION
Although Mr. Hopkins assigns four separate errors in his brief, he makes only three arguments, to-wit: (i) that the police arrested him without probable cause before his inculpatory statement, (ii) that the statement should be held inadmissible because he was not informed of his rights, and (iii) that there was no valid consent to the search of his car or his home. As noted at the outset, all three arguments are attempts to establish that the trial court erred in denying the defense’s motion to suppress.
In State v. Long, 2003-2592 (La.9/9/04), 884 So.2d 1176, 2004 WL 2008208, the Louisiana Supreme Court addressed the admissibility of evidence seized from an automobile without a warrant under circumstances similar to those presented here. In Long, the defendant, Francis, was detained by the police, made |7an inculpatory statement that drugs were located in the vehicle, and, based on that statement, the police searched the vehicle without a warrant. The Louisiana Supreme Court found the issue of whether the evidence seized from the vehicle was admissible turned on the factual determination of at what point Francis was seized, ie., arrested. The Court reasoned:
[I]f Francis was ‘seized’ when the detectives informed him that he was under investigation and given his Miranda warnings, then there is a question of whether probable cause existed to make such an arrest, and the exclusionary rule may apply to the subsequent search of his vehicle. However, if the seizure was not made until after Francis admitted where the marijuana was located, then the search of his vehicle was made subject to probable cause, and the exclusionary rule does not apply.
Long, 2003-2592 at p. 11, 884 So.2d at 1183. Resolving that factual issue, the Court reasoned:
The two officers, after following Francis to his residence, approached him, told him that he was under investigation for the distribution of marijuana, and advised him of his rights. There is no evidence of any physical contact between the two officers and Francis, nor did the officers order Francis to submit to any of their commands. However, they did exercise their rights to ask questions of Francis after specifically communicating to him that he was not required to answer them. When asked by the officers if he was transporting any marijuana, Francis admitted that he had marijuana in the back seat of his automobile. Only then did the officers take Francis into custody and search his vehicle, thereby discovering the three pounds of marijuana packaged in gallon-sized “Ziploc” bags.
Given these facts, based on the relevant federal and state law,[6] we cannot say *713 that the search of Francis’s vehicle was the product of an | ¿unlawful seizure. When the officers approached the vehicle, a reasonable, innocent person would not believe that he was under arrest. Thus, the admission that Francis had marijuana in his possession was not the fruit of an illegal seizure, b.ut rather it provided the requisite probable cause for the arrest of Francis and search of his vehicle.
Long, 2003-2592 at p. 13, 884 So.2d at 1185 (Footnotes omitted).
The officers in the instant case engaged in a similar level of contact with Mr. Hopkins as did the officers in Long with the suspect, Francis. The officers approached Mr. Hopkins, advised him that he was being investigated for narcotics activity, and advised him of his rights. The only potentially distinguishing facts are that Mr. Hopkins 'testified the officers patted him down and escorted him from where he was standing over to his car. However, Mr. Hopkins never testified that he was handcuffed or placed in a police car before making the inculpatory statement that there was marijuana in his car; rather, he denied ever making any inculpatory statements. In its written judgment, the trial court specifically found that it did “not find the testimony of the 'defendant credible.” This decision not to credit the testimony of a witness must be accorded great deference. State v. Goodman, 99-2352, pp. 3-4 (La.App. 4 Cir. 10/13/99), 746 So.2d 693, 695; State v. Perez, 99-2063 (La.App, 4 Cir. 9/26/99), 744 So.2d 173. Under the analysis • in Long, Mr.. Hopkins was not under arrest at the time he made the inculpatory statement that there was marijuana in his vehicle. Once he had made this admission, the police officers had probable cause to search his vehicle, and they could do so without a warrant under the automobile exception to- the warrant requirement.
We further note that, as the State points out, the officers in this case, unlike in Long, had probable cause to arrest Mr. Hopkins when they initially detained him. *714 Before Mr. Hopkins was detained, Officer Williams observed Mr. Hopkins engage in two apparent hand-to-hand drug transactions. That observation provided the officers with probable cause, to arrest Mr. Hopkins. See State v. Armstead, 2002-1030, p. 11 (La.App. 4 Cir. 11/6/02), 832 So.2d 389, 396, writ denied, 2002-3017 (La.4/21/03), 841 So.2d 791(finding that officer had probable cause to arrest defendant “after he observed what appeared to be a hand-to-hand drug transaction”); La. C.Cr.P. art. 213 (providing that a law enforcement officer is permitted to arrest a person who has committed an offense in his presence).
As noted, the officers placed Mr. Hopkins under arrest after the marijuana was seized from the blue car. That arrest was clearly based on probable cause, and the subsequent search of his person, resulting in the seizure of a small amount of marijuana and some currency, was justified as a search incident to that arrest. State v. Morgan, 445 So.2d 50, 51 (LaApp. 4th Cir.1984).
Mr. Hopkins argues separately that his inculpatory statement to the police that he had marijuana in the car was illegally elicited because the record does not clearly show that he was advised of his Miranda rights. As noted, he denied that he was ever advised of his rights, and he contends that there was conflicting |intestimony regarding when he was given his rights. Contrary to his contentions, Officer Welch testified that he advised Mr. Hopkins of his rights when he first made contact with him. Further, Officer Welch stated that the rights were repeated after Mr. Hopkins was arrested, which occurred after the marijuana was seized from the vehicle. Officer Williamson, Officer Welch’s partner, testified that he believed it was Officer Welch who advised Mr. Hopkins of his rights when they first detained him and “advised him of what was going on.” Sergeant Wilson also testified that Mr. Hopkins was advised of the investigation and of his rights as is routine. Thus, there appears to be no conflict in the officers’ testimony; rather, the only conflict is between Mr. Hopkins’ testimony and the officers’ testimony. The trial court found Mr. Hopkins’ testimony not to be credible.
In his third argument, Mr. Hopkins contends that there was no valid consent to a search of either his car or his residence. However, as to the car, the officers had probable cause to search it once Mr. Hopkins admitted there was marijuana in the car (or, as discussed earlier, when he was initially detained) and the necessary exigent circumstances under the “automobile exception” to the Fourth Amendment warrant requirement justified an immediate search of the car. Thus, Mr. Hopkins’ consent was not necessary for a valid search of the car.
The same is not true as to the residence. A search warrant, an exception to the warrant requirement, or lawful consent was necessary for a lawful search of the residence. State v. Hall, 94-2051, p. 6 (La.App. 4 Cir. 3/16/95), 652 So.2d 1086, 1089; State v. Franklin, 95-1876, p. 5 (La.1/14/97), 686 So.2d 38, 41. The State has the burden of proving valid consent. State v. Green, 376 So.2d 1249 (La.1979). The voluntariness of the consent must be determined based on the overall facts and circumstances of the case. State v. Edwards, 434 So.2d 395 (La.1983). A trial In judge’s factual determination on this issue is entitled to great weight on appellate review. Franklin, 95-1876 at p. 5, 686 So.2d at 41; See also State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O’Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115.
In its written judgment, the trial court addressed the conflicting testimony of Ms. *715 Brown and the officers regarding Ms. Brown’s consent to search the residence. As noted, Ms. Brown testified that she signed the form after the search and that the officers, who were “dressed in blue,” misrepresented themselves as probation officers. The trial court found Ms. Brown’s testimony on this point “strains all credulity since a blue police uniform is hardly similar to that of a probation officer.” The court also stressed that “despite the fact that she testified to alleged coercive comments by the officers, Ms. Brown never actually testified that she did not or would not give permission.” The court thus made a factual determination that Ms. Brown gave a voluntary consent for the search before it took place. The trial court’s decision was based upon the credibility of the witnesses and such decision to credit the testimony of a witness is entitled to great deference. See State v. Goodman, 99-2352, pp. 3-4 (La.App. 4 Cir. 10/13/99), 746 So.2d 693, 695.
Nevertheless, Mr. Hopkins argues that, even assuming Ms. Brown consented before the search, the search was still invalid because it was coerced by threats that Ms. Brown would be arrested if she did not cooperate. In support of this argument, Mr. Hopkins cites State v. Alexis, 514 So.2d 561 (La.App. 4th Cir.1987), in which the police threatened the defendant’s entire family with arrest if they failed to consent to the search.
In Alexis, the police officers entered the home of the defendant they had | ^.detained and confronted several of his family members, including his father who was in ill health. The police officers informed the defendant’s father that, if it became necessary to obtain a search warrant and drugs were found, they might arrest all of the occupants of the house, but they actually were only interested in the defendant and, if consent were given and drugs found, only he would be arrested. Alexis, 514 So.2d at 564. Although the State argued on appeal to this court that this explanation of alternatives was both reasonable and accurate, we disagreed. We- found that “it constituted illegal duress or coercion that vitiated Mr. Alexis’s free and voluntary consent to the search.” Alexis, 514 So.2d at 564. We further found that:
By offering the “carrot” of arresting only Ricard III if illegal drugs were found in a consent search while wielding the “stick” of possibly arresting the entire family if a warrant were necessary, the officers effectively pressured Mr. Alexis into signing the consent form. This is particularly true when considering the surrounding circumstances involved in the instant case. This inducement, even if made in good faith, is a form of police activity that cannot be tolerated where Fourth • Amendment rights are involved. In the wake of the reading of Miranda rights to the entire family and Mr. Alexis’s poor health, the “alternatives” offered to him amounted to an illegal bargain for his consent that destroyed his freedom of choice and rendered involuntary his decision to allow the search.
Alexis, 514 So.2d at 564-65. Here, there is slight testimony indicating that the police officers perhaps used the “carrot” and “stick” approach we found improper in Alexis in obtaining Ms. Brown’s -consent. Detective Coleman testified that Ms. Brown was informed that Mr. Hopkins was under arrest for a narcotics violation, that they believed narcotics were in the residence, and they asked for her assistance in the investigation by signing the consent form. Defense counsel asked Detective Coleman if Ms. Brown was informed that she would not be arrested if narcotics were found, and the detective responded, “[w]e advised her if she cooperated, correct.” Sergeant Wilson |lSwas the other officer *716 who signed the consent form with Ms. Brown and Detective Coleman. Sergeant Wilson was asked by defense counsel to state “the precise words” he spoke to Ms. Brown to obtain consent to search; he replied, “[w]e explained to Ms. Brown that Mister — that your client was under arrest for possession with intent to distribute marijuana, that we believed he was secreting marijuana in her house, and we asked her if she would give us her permission to search the house.” Defense counsel asked if Sergeant Wilson informed Ms. Brown “that if she cooperated and you found drugs in the house, that since Mr. Hopkins was the target of the investigation she would not be arrested if she cooperated?” He replied, “I don’t remember the exact words that I used. Like I said, it was about a year ago.” Thus, Sergeant Wilson did not contradict Detective Coleman’s testimony on this point. However, on redirect, the prosecutor questioned Sergeant Wilson about his decision not to arrest Ms. Brown, even though she lived in the house with Mr. Hopkins and occupied the bedroom where the drugs were found. Sergeant Wilson stated that because “she was not out there when we made the arrest of Mr. Hopkins I did not arrest her. I did not link her to this investigation.”
Notably, Ms. Brown testified that it was not until after the officers had searched that they informed her that if she did not cooperate she would go to jail and her daughter would be taken away from her. The trial court rejected this testimony. Neither Ms. Brown nor any other witness testified to any other factors which indicate coercion or duress, in contrast to Alexis where the defendant’s father was in ill health, all of the family members were detained in a single room and given their rights, and all were threatened with arrest if the defendant’s father did not cooperate. Thus, this case is distinguishable from Alexis. The trial court did not err in its finding that Ms. Brown voluntarily consented to the search of the residence.
114DECREE
For the forgoing reasons, the defendant’s conviction is affirmed, his sentence is vacated, and the case is remanded for resentencing in accordance with the views expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED.

. Although Mr. Hopkins gave notice of intent to seek writs from this judgment and was granted thirty days in which to do so, he did not file a writ application.

. In the Crosby case, the Louisiana Supreme Court held that "we are not barred from reviewing the assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea of guilty so conditioned (which the court had discretion to refuse, if proffered upon such reservation.)” 338 So.2d at 588.

.Because Mr. Hopkins entered a guilty plea, the facts of this case are taken from the transcripts of the three motion hearings, which were held on September 4, 2003, September 26, 2003, and on October 30, 2003.

. La.C.Cr.P. art. 893(D) provides:
D. (l)(a) When it appears that the best interest of the public and of the defendant will be served, the court may defer, in whole or in part, the imposition of a sentence after conviction of a first offense non-capital felony under the conditions set forth in this Paragraph. When a conviction is entered under this Paragraph, the court may defer the imposition of sentence and place the defendant on probation under the supervision of the division of probation and parole.
(b) The court shall not defer a sentence under this provision for an offense or an attempted offense which is defined or enumerated as a crime of violence under R.S. 14:2(13) or a sex offense as defined by R.S. 15:541(14.1), involving a child under the age of seventeen years or for a violation of the Uniform Controlled Dangerous Substances Law punishable by a term of imprisonment of more than five years or for a violation of R.S. 40:966(A), 967(A), 968(A), 969(A), or 970(A).
(2) Upon motion of the defendant, if the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relating to cumulation of offenses. Dismissal under this Paragraph shall occur only once with respect to any person.

. La.C.Cr.P. art. 893(A) provides:
When it appears that the best interest of the public and of the defendant will be served, the court, after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole. The court shall not suspend the sentence of a conviction for a crime of violence as defined in R.S. 14:2(13)(a), (b), (c), (d), (e), (i), (j), (k), (Z), (m), (n), (o), (p), (q), (r), (t), (v), (w), (x), (bb), (cc), or (dd), or of a second conviction if the second conviction is for a violation of R.S. 14:73.5, R.S. 14:81.1, or R.S. 14:81.2. The period of probation shall be specified and shall not be less than one year nor more than five years. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.

. Summarizing the pertinent jurisprudence, the Court stated:
In California v. Hodari D., the United States Supreme Court held that an individual is *713 not "seized” within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). This Court has expanded this definition to comport with our law, holding that an individual is "seized” under the Louisiana Constitution when he is either "actually stopped” on when the "actual stop” of the individual is imminent. State v. Tucker, 626 So.2d 707 (La 5/24/93); La. Const. Art. 1, § 5. In Tucker, this Court decided that under Louisiana’s slightly broader definition of the term, a "seizure” may occur "when the police come upon an. individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain.” 626 So.2d at 712. The U.S. Supreme Court addressed a similar, more relevant, issue in Florida v. Bostick, holding that a seizure does not occur simply because an officer approaches, an individual and asks a few questions, as long as a reasonable person would feel free to disregard the police and go about his business. 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In this opinion, the Court stated that even when officers have no basis for suspecting a particular individual of criminal activity, they generally, may ask questions of that individual as long as the police do not convey the message that compliance with their requests is required. Id., 501 U.S. at 436, 111 S.Ct. at 2386; State v. Sylvester, 01-607 (La.9/20/02), 826 So.2d 1106. The test for whether a "seizure” has occurred, then, “is whether a reasonable person would feel free to decline the officer’s request or otherwise terminate the encounter.” Bostick, 501 U.S. at 436, 111 S.Ct. at 2386. In deciding what constitutes a “reasonable person,” one must look "form [ (sic) ] the viewpoint of an innocent person in his position.” Id., 501 U.S. at 438, 111 S.Ct. at 2388.
Long, 2003-2592 at pp. 11-13, 884 So.2d at 1184 (footnotes omitted).